**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **KEITH DESHON ADAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 2:24-00315** |
| | ) | |
| **BRANDON DODRILL, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Defendants' Motion to Dismiss (Document No. 17), filed on February 3, 2025. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 19.) After being granted an extension of time, Plaintiff filed his Response in Opposition on May 6, 2025. (Document No. 25.) On May 12, 2025, Defendants filed their Reply. (Document No. 27.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion to Dismiss (Document No. 17) should be granted in part and denied in part. Specifically, Defendants' Motion to Dismiss should be (1) granted as to Defendant Hogan, (2) granted as to Plaintiff's Eighth Amendment excessive force claim against Defendant Dodrill, and (3) denied as to Plaintiff's Fourth Amendment excessive force claim against Defendant Dodrill.

**PROCEDURAL BACKGROUND**

On June 26 2024, Plaintiff, acting *pro se,* filed his Application to Proceed Without Prepayment of Fees and Costs and a Complaint claiming entitlement to relief under 42 U.S.C.

§1983.[1] (Document Nos. 1 and 2.) In his Complaint, Plaintiff names the following as Defendants:

(1) Brandon Dodrill, Oak Hill Police Officer; and (2) Tyler Hogan, Oak Hill Police Officer. (Id.,

p. 2.) Plaintiff alleges that Defendants Dodrill and Hogan violated his rights under the Eighth and

Fourth Amendments. (Id.) Specifically, Plaintiff contends that Defendant Dodrill subjected him to

unnecessary and excessive force. (Id.) Plaintiff alleges that Defendant Hogan is liable based upon

bystander liability because Defendant Hogan knew Defendant Dodrill was using excessive force

and she failed to intervene to protect Plaintiff from the use of unnecessary and excessive force by

Defendant Dodrill. (Id.) In support, Plaintiff states as follows:

> On or about 9-27-22, I was a passenger in a vehicle that was pulled over. At that time, Officer Brandon Dodrill approached the vehicle and asked for license and registration without any real probable cause. Ofc. Dodrill then asked myself and the driver of the vehicle to step out. At that time, Officer Dodrill began to profile myself and the driver and showed direct deliberate indifference by utilizing a taser gun on me for 30 full seconds at up to 50,000 volts, which could have been fatal. After he tased me, he then put me in a chokehold and continued to choke me as I was struggling to verbally tell him "I couldn't breathe." In which he kept on choking me. At that time is when I noticed Officer Tyler Hogan on the scene. The whole incident was captured on bodycam footage. This incident took place in Oak Hill, West Virginia, on Route 19 and Summerlee Road. Also, Officer Dodrill used other means of excessive use of force by pulling his steel extractable baton and hitting me with it with such force that it caused two (2) teeth to have to be surgically removed, which also gave me a broken jaw and placed me in CMC (Charleston Medical Center). I was charged a substantial medical bill . . . which I cannot afford to pay due to injuries from the excessive use of force by Officer Dodrill violating my 8th Amendment Rights and also the 4th Amendment.

(Id.) Plaintiff requests injunctive and monetary relief. (Id., pp. 5 – 6.) By Order entered on June

27, 2024, the undersigned found Petitioner's Application to Proceed Without Prepayment of Fees

and Costs to be deficient because the Application was unsigned by Plaintiff. (Document No. 4.)

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

The undersigned directed that Plaintiff's Application be returned to him, Plaintiff submit a complete Application including his signature, and return such by June 29, 2024. (Id.) On July 8, 2024, Plaintiff filed his signed Application to Proceed Without Prepayment of Fees and Costs. (Document No. 5.) By Order entered on January 7, 2025, the undersigned granted Plaintiff's Applications to Proceed Without Prepayment of Fees and directed the Clerk to issue process. (Document No. 8.) The Clerk's Office issued process the same day. (Document No. 9.)

On February 3, 2025, Defendants filed a Motion to Dismiss and Memorandum in Support. (Document Nos. 17 - 18.) Defendants argue that Plaintiff's claims should be dismissed based on the following: (1) "Plaintiff has failed to state facts or a legal claim upon which relief can be granted and the Complaint must be dismissed as to Tyler Hogan pursuant to *Iqbal/Twombly*" (Document No. 18, pp. 6 – 7); and (2) Defendants Dodrill and Hogan are entitled to qualified immunity for Plaintiff's claims (Id., pp. 7 – 14). As Exhibits, Defendants attach the following: (1) A copy of the Criminal Complaint filed against Plaintiff in the Magistrate Court of Fayette County, West Virginia, on September 28, 2022 (22-MIOF-00220) (Document No. 17-1); (2) A copy of the United States' Sentencing Memorandum as filed in United States v. Adams, Case No. 2:23-cr-00142 (S.D.W.Va. Oct. 15, 2024) (Document No. 17-2, pp. 2 – 5); (3) A copy of Plaintiff's Plea Agreement as filed in Case No. 2:23-cr-00142 (Id., pp. 6 – 14); (4) A copy of the Docket Sheet from Case No. 2:23-cr-00142 (Id., pp. 15 – 20); (5) A copy of the "District Judge Daybook Entry" concerning Plaintiff's sentencing hearing in Case No. 2:23-cr-00142 (Id., p. 21); and (6) A copy of Plaintiff's Indictment as filed in Case No. 2:23-cr-00142 on September 7, 2023 (Id., p. 22).[4]

---

[4] In Defendants' Motion to Dismiss, Defendants attach a copy of pertinent documents filed in criminal proceedings stemming from Plaintiff's arrest. The undersigned, however, finds that these document are not documents outside the pleadings requiring the conversion of the motion to dismiss into a motion for summary judgment. In reviewing the sufficiency of a complaint, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); *also see Wittholh v. Federal Insurance Co.*, 164 Fed.Appx. 395, * 1 (4th Cir.

Notice pursuant to <u>Roseboro</u> was issued to Plaintiff on February 4, 2025, advising him of the right to file a response to the Defendants' Motion to Dismiss. (Document No. 19.) On May 6, 2025, Plaintiff filed his Response in Opposition. (Document No. 25.) As Exhibits, Plaintiff attaches the following: (1) A copy of the transcripts from a suppression hearing conducted on April 11, 2024, in Case No. 2:23-cr-00142 (Document No. 25-1, pp. 2 – 73); (2) A copy of a photograph from a bodycam (<u>Id.</u>, p. 75); and (3) A copy of pertinent medical records (Document No. 23).

## **FACTUAL BACKGROUND**

### *A.    Information from Criminal Complaint filed in Magistrate Court of Fayette County:*

According to the sworn Criminal Complaint prepared by Officer William Willis, Plaintiff was arrested on September 27, 2022 in Oak Hill, West Virginia (*State v. Adams*, Case No. 22-MIOF-00220(Mag. Ct. of Fayette Co.). (Document No. 17-1.) Defendant Dodrill, a Patrol Officer with the Oak Hill City Police Department, was on patrol when he observed a blue Buick with Arizona plates (HEA9D5A) leaving the residence of John Hancock (169 Crawford Street). (<u>Id.</u>) The Oak Hill City Police Department, the West Virginia State Police, and the Fayette County

---

2006)(when considering a motion to dismiss, "a court may consider official public records"); *Pueschel v. United States*, 369 F.3d 345, 354 n. 3 (4th Cir. 2004)("If, on a motion . . . to dismiss . . . matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56"); *American Chiropractic Association v. Trigon Health Care, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)("[W]hen a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiff's do not challenge its authenticity."); *White v. Marsh*, 2014 WL 4418193 (S.D.W.Va. Sept. 8, 2014)(J. Johnston)(citations omitted)("Several circuits, including the Fourth, have recognized that a court may in addition consider documents attached to a motion to dismiss when they are "integral to and explicitly relief on in the complaint and . . . the plaintiffs do not challenge [their] authenticity."); *McDowell v. Town of Sophia*, 2012 WL 3778837 (S.D.W.Va. Aug. 30, 2012)(J. Berger)(citations omitted)("In addressing a motion to dismiss, the court may consider a plaintiff's factual allegations made in the complaint, any exhibits attached thereto, documents attached to the motion to dismiss that are authentic and integral to the complaint, and any matters of public record of which the court may take judicial notice."); *but see Zavolta v. Henderson*, 2011 WL 1790492, * 2 (N.D.W.Va. May 10, 2011)("Affidavits are document outside the pleadings and this Court must convert the motion to dismiss to a motion for summary judgment if it is to consider the . . . affidavits.") In the instant case, Plaintiff's does not dispute that the conduct underlying the Complaint resulted in State and Federal criminal charges <u>and</u> such are public record the Court may take judicial notice. Further, Plaintiff does not challenge the authenticity of these documents. The undersigned, therefore, will consider this document without converting Defendants' Motion to Dismiss into one for summary judgment.

Sheriff's Office had previously received several complaints regarding Mr. Hancock, his residence, and the sale and delivery of controlled substances. (Id.) Upon observing the vehicle and being unable to see inside the vehicle due to extremely dark window tint, Defendant Dodrill initiated a traffic stop based on the suspected violation of W. Va. Code § 17C-15-36A (Sun-screening devices). (Id.) As Defendant Dodrill began the traffic stop, the subject vehicle passed several places to safely pull over and was slow to stop. (Id.) Once the subject vehicle pulled over, Defendant Dodrill requested the assistance of a nearby officer (Defendant Hogan). (Id.) Immediately upon making contact with the occupants of the subject vehicle, Defendant Dodrill detected the odor of marijuana coming from the vehicle. (Id.) Then neither occupant of the vehicle could locate the vehicle's registration and insurance cards, and it became clear that neither occupant owned the subject vehicle. (Id.) Based on the foregoing factors, Defendant Dodrill requested the occupants exit the subject vehicle and stand in front of his police cruiser. (Id.) Both occupants delayed exiting the subject vehicle and appeared nervous. (Id.) As Plaintiff exited the passenger side of the subject vehicle, Plaintiff was observed to be doing something in the floorboard and inside the lower door pocket. (Id.) Defendant Dodrill further observed Plaintiff wearing a crossbody bag, making movements indicating a desire to flee, and then suddenly running away from the vehicle. (Id.) After Plaintiff ignored several verbal commands to stop from Defendant Dodrill, Defendant Dodrill deployed a single shot from his taser striking Plaintiff in the back. (Id.) As a result, Plaintiff fell forward onto the payment. (Id.) When the taser cycle ended, Plaintiff immediately attempted to get up. (Id.) Defendant Dodrill initiated another cycle of the taser in an effort to gain control of the situation. (Id.) As Defendant Dodrill was trying to secure handcuffs on Plaintiff, Plaintiff continued to ignore commands to stop resisting by continuing to resist, physically fighting, and attempting to reach inside his bag. (Id.) Defendant Dodrill then calls

out to Defendant Hogan for assistance in restraining Plaintiff. (Id.) During the struggle, Plaintiff was able to retrieve a baggie containing an unknown powder substance from his crossbody bag. (Id.) Plaintiff managed to tear open the baggie, placed the baggie to Defendant Dodrill's head, and squeezed the baggie causing the contents to go into the face of Defendant Dodrill. (Id.) Defendant Dodrill retreated from the struggle to get out of the powder, but Defendant Hogan continued to struggle with Plaintiff. (Id.) Defendant Hogan continued to struggle with Plaintiff until she was finally able to subdue and apprehend Plaintiff. (Id.) Defendant Dodrill then advised Defendant Hogan that he thought he was overdosing. (Id.) Defendant Hogan administered a dose of Narcan to Defendant Dodrill and was starting to give him a second does when she became overcome by the substance that Plaintiff deployed while resisting arrest. (Id.) A local nurse driving by the scene of the incident stopped upon seeing the officers in distress, and the nurse administrated Narcan to both Defendants. (Id.) As a result, both Defendants Dodrill and Hogan required transportation by EMS to the local hospital for treatment for fentanyl overdose. (Id.) During Defendants Dodrill and Hogan's attempt to restrain Plaintiff, the driver of the subject vehicle fled the traffic stop. (Id.) At the time of Plaintiff's above arrest, he was a wanted fugitive for violation of federal parole out of Virginia. (Id.)

**B.    *Information from Federal Indictment, Suppression Hearing, the United States' Sentencing Memorandum, and Plaintiff's Plea Agreement in Criminal Action No. 2:23-00142:***

As a result of the traffic stop and arrest, Plaintiff was found to be in the possession of 17.8 grams of methamphetamine "ice," 49.92 grams of methamphetamine mixture, 148.64 grams of fentanyl, and 1.05 grams of cocaine. (Document No. 17-2, p. 3.) Based upon the foregoing, Plaintiff was charged by a single-count Indictment in United States District Court for the Southern District of West Virginia with possession with the intent to distribute 5 grams or more of

methamphetamine and a quantity of fentanyl in violation of 21 U.S.C. § 841(a)(1) (Criminal Action No. 2:23-00142). (Id., p. 22.)

During the Suppression Hearing, Defendant Dodrill testified he was patrolling "Hell Holler" on the day of Plaintiff's arrest. (Document No. 25-1, pp. 8 – 9, 27.) Defendant Dodrill explained that the area was known as "Hell Holler" because it is "an extreme problem area" for drug activity. (Id., p. 9.) Defendant Dodrill stated he observed a vehicle with Arizona plates with extremely dark window tint parked at the residence of a suspected drug dealer. (Id., p. 12.) Defendant Dodrill explained that he initiated a traffic stop due to dark window tint and the vehicle delayed stopping by passing a couple of safe pull off areas before actually stopping. (Id., pp. 18 – 19.) Defendant Dodrill stated that he then requested Defendant Hogan "to swing in behind [him] just because of the delayed stop and coming from . . . a narcotics area." (Id., pp. 19 – 20.) Defendant Dodrill explained he approached the vehicle, informed the driver he was stopped for dark window tint, and asked for "license, registration, and insurance." (Id., p. 20.) Defendant Dodrill noted there were only two individuals in the vehicle and he immediately noticed the smell of marijuana coming from inside the vehicle. (Id.) Defendant Dodrill testified that both occupants produced identification cards, and at that time, he was not aware that Plaintiff's identification card did not match Plaintiff. (Id., p. 45.) Defendant Dodrill explained that due to the occupants appearing nervous and failing to produce the insurance and registration cards, he asked the occupants to exit the vehicle and stand in front of his cruiser. (Id., pp. 20 – 21.) Defendant Dodrill stated that both occupants delayed getting out of the vehicle and once Plaintiff exited the passenger side, Plaintiff "looks around a little bit," and "then all of a sudden, he takes off running toward the front of the vehicle up the roadway." (Id., p. 24.) Defendant Dodrill testified that he immediately began chasing after Plaintiff and deployed a single shot from his taser into Plaintiff' back causing Plaintiff

to fall to the ground. (Id.) Defendant Dodrill testified that Plaintiff took approximately seven steps before Defendant Dodrill tased Plaintiff and that Defendant Dodrill gave no verbal commands before tasing Plaintiff. (Id., pp. 46 – 47.) Defendant Dodrill further acknowledged that his police report inaccurately stated that he gave Plaintiff verbal commands to stop prior to tasing him. (Id., p. 47.) Defendant Dodrill stated that he deployed a second taser shot when Plaintiff was trying to get up and attempting to reach inside a crossbody bag. (Id., pp. 25 and 60.) Considering both taser shots, Defendant Dodrill testified that Plaintiff was tased for a total of 30 seconds. (Id., pp. 48 and 60.) Defendant Dodrill acknowledged that in response to the second taser shot, Plaintiff stated "You're going to kill me." (Id., p. 48.) Defendant Dodrill stated he got on top of Plaintiff in an attempt to subdue him, but Plaintiff continued resisting and attempting to reach inside the crossbody bag. (Id.) Defendant Dodrill testified he was concerned that Plaintiff had a gun or weapon inside the bag. (Id., pp. 48 and 60.) Defendant Dodrill acknowledged that during the struggle, he reached across Plaintiff's chest in an attempt to subdue him and eventually put Plaintiff in a chokehold. (Id., pp. 49 – 52.) Defendant Dodrill verified that throughout his struggle with Plaintiff, Plaintiff stated several times that he could not breathe. (Id., pp. 51 and 52.) Defendant Dodrill, however, explained that while Plaintiff was saying he could not breathe, Plaintiff was "still actively resisting, fighting with two police officers, and [was] actually able to push off the ground with two police officers on his back." (Id., p. 61.)

Defendant Dodrill testified that initially Defendant Hogan was acting merely as a "backing officer" and she did not exit her cruiser when Defendant Dodrill made contact with occupants of the vehicle. (Id., pp. 26 – 27.) Defendant Dodrill stated that when Plaintiff "took off running, the driver of the vehicle then attempted to flee in the vehicle by making a U-turn across the roadway, at which time Corporal Hogan pulled her vehicle across the roadway to block him."

(Id., pp. 26, 29.) Defendant Dodrill explained that when Plaintiff continued resisting and attempting to reach inside the crossbody after the second taser shot, Defendant Dodrill called out for Defendant Hogan's assistance. (Id., p. 25.) Defendant Dodrill stated that when he called out for assistance, Defendant Hogan disengaged with the driver, the driver fled the scene in the vehicle, and Defendant Hogan joined the struggle to restrain Plaintiff. (Id., pp. 26 - 27.) Defendant Dodrill testified that he was able to get one handcuff on one of Plaintiff's arms, but Plaintiff continued to resist and attempt to reach inside the crossbody bag. (Id.) Defendant Dodrill stated that Plaintiff was able to retrieve a bag of white powder from the crossbody bag. (Id.) Defendant Dodrill explained that he was overtop of Plaintiff's back with his head over Plaintiff's left shoulder when Plaintiff used his left fingernail to rip the bag open and then squeezed the bag causing a cloud of white powder to expel into Defendant Dodrill's face. (Id., pp. 27 – 28.) Defendant Dodrill stated that the white powder was on his face, in his hair and beard, and on his vest. (Id., p. 28.) Defendant Dodrill explained that at this point, he pushed himself back and distanced himself to "catch [his] bearings" and "to get out of the cloud of the substance." (Id.) Defendant Dodrill testified that a short time later, he was dizzy, stumbling around, and light-headed. (Id., pp. 28 and 35.) Defendant Dodrill explained that Defendant Hogan attempted to tase Plaintiff, but the taser malfunctioned and Defendant Dodrill was hit with one of the projectiles from the taser. (Id., pp. 30 – 31, 52 - 53.) As a result of his exposure to the white powder, Defendant Dodrill testified that he received the following medical treatment (1) Administration of Narcan from a nurse that was a passerby; (2) Administrated of Narcan through the veins by EMS; and (3) A Narcan IV drip from at the hospital. (Id., p. 35.) Defendant Dodrill acknowledged that testing conducted at the hospital did not reveal fentanyl in his system. (Id., p. 58.) Defendant Dodrill, however, explained the negative fentanyl test as follows:

9

The hospital failed to do a blood test. They did a urinalysis. Based off the expert that we consulted with [in State court proceedings], it takes approximately four hours for your body to break down fentanyl enough to be testified, or enough to be detected in a urinalysis test. Also, the test would have to be specific for fentanyl and not just opiates because fentanyl is a synthetic opiate.

(Id., p. 62.)

On June 10, 2024, Plaintiff pled guilty to the single-count Indictment. (Id., pp. 6 – 14, 19.)

It is undisputed that Plaintiff's Plea Agreement contained a "Stipulation of Facts," which was attached as Exhibit A. (Id., pp. 9, 13 – 14.) The "Stipulation of Facts" contain relevant conduct concerning the above incident. (Id.) The "Stipulation of Facts" stated, in pertinent part, as follows:

On September 27, 2022, I was a passenger in a vehicle that was stopped in Oak Hill, Fayette County, West Virginia, within the Southern District of West Virginia. I was asked to exit the vehicle and stand at the front of an Oak Hill Police officer's cruiser. I ran the opposite direction and was tased while I fled from the officer. I was wearing a cross-body bag that contained controlled substances including methamphetamine, fentanyl, and tablets containing methamphetamine and ecstasy.

The controlled substances in my bag were collected and sent to the DEA laboratory for testing. The total amounts of each controlled substances recovered from my bag were as follows:

Methamphetamine (ice) – 17.8 grams
Methamphetamine mixture – 49.92 grams
Fentanyl – 148.64 grams
Cocaine – 1.05 grams

The total amount of controlled substances I am responsible for possession with the intent to distribute was at least 700 kilograms but less than 1,000 kilograms of converted drug weight. I intended to distribute the methamphetamine and fentanyl that I possessed in and around the Southern District of West Virginia.

The parties stipulate and agree that the city of Oak Hill is in Fayette County, West Virginia, and within the Southern District of West Virginia. I further agree that Methamphetamine and Fentanyl are both Schedule II controlled substances.

This Stipulation of Facts does not contain each and every fact known to defendant and to the United States concerning his involvement and the involvement of others in the charges set forth in the Indictment.

(Id., pp. 13 – 14.)

## THE STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

10

accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief." <u>Id.</u> at 556 U.S. at 679, 129 S.Ct. at 1950. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. at 1959. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); <u>Loe v. Armistead</u>, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." <u>Miller v. Jack</u>, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(<u>citing</u> <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. <u>Small v. Endicott</u>, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the

pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Virginia Legal Aid Society, Inc., 807 F.3d 619, 630 (4th Cir. 2015), abrogated in part on other grounds by, Bing v. Brivo System, LLC, 959 F.3d 605, 914-15 (2020).

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

1.  **Bystander Liability:**

In his Complaint, Plaintiff alleges that Defendant Hogan is liable based upon bystander liability because Defendant Hogan knew Defendant Dodrill was using excessive force and she failed to intervene to protect Plaintiff from the use of unnecessary and excessive force by Defendant Dodrill. (Document No. 2.) Plaintiff alleges that Defendant Dodrill initiated a traffic stop on a vehicle he was travelling in as a passenger. (Id.) Plaintiff states that Defendant Dodrill

12

asked the driver and Plaintiff to step out of the vehicle after asking for the driver's license and registration. (<u>Id.</u>) Plaintiff contends "[a]t that time, Officer Dodrill began to profile myself and the driver and showed direct deliberate indifference by utilizing a taser gun on me for 30 full seconds at up to 50,000 volts, which could have been fatal." (<u>Id.</u>) Plaintiff alleges that after Defendant Dodrill tased him, Defendant Dodrill put Plaintiff in a "chokehold and continued to choke [Plaintiff] as [Plaintiff] was struggling to verbally tell him 'I couldn't breathe.'" (<u>Id.</u>) Plaintiff alleges that it was at this time when the "noticed" Defendant Hogan on the scene. (<u>Id.</u>) Plaintiff alleges that Defendant Dodrill also hit Plaintiff with his steel extractable baton causing a broken jaw and the loss of two teeth. (<u>Id.</u>)

In the Motion to Dismiss and Memorandum in Support, Defendant Hogan argues that Plaintiff has failed to "state facts or a legal claim upon which relief can be granted" as to Defendant Hogan. (Document No. 17 and Document No. 18, p. 6 – 7.) Defendant Hogan notes that Plaintiff merely alleges that he "noticed Officer Tyler Hogan on the scene." (<u>Id.</u>, p. 6.) Defendant Hogan asserts that "beyond one sentence naming Hogan and vague assertions of showing signs of abusive actions, Plaintiff makes no reference to Officer Hogan nor alleges that Hogan performed any act that would support a claim of excessive force." (<u>Id.</u>) Defendant Hogan claims that "Plaintiff has failed to even allege an unadorned, the-defendant-unlawfully-harmed me accusation" as to Defendant Hogan. (<u>Id.</u>, p. 7.) Defendant Hogan contends that "Plaintiff has failed to allege any fact or corresponding legal theory which would demonstrate Hogan did anything to him or that the Plaintiff is entitled to relief." (<u>Id.</u>) Therefore, Defendant Hogan asserts that the Complaint should be dismissed as to Defendant Hogan because "Plaintiff has failed to allege any legal or factual basis which would support a claim or entitle him to relief." (<u>Id.</u>)

In Response, Plaintiff first requests that the Court "take judicial notice of the facts

contained in the public documents in the associated criminal action in federal Criminal No. 2:23-cr-00142 as it pertains to the instant claims of the Plaintiff . . . and both of the Defendants." (Document No. 25, p. 1.) Plaintiff continues to claim that Defendant Dodrill used unnecessary and excessive force because "Plaintiff was tased and choked and also hit with a baton." (Id., p. 2.) Plaintiff alleges that from the beginning of the "illegal traffic stop," he was in fear for his life because "Black American have been afraid of police due to mass police killings and brutality." (Id.) Plaintiff contends that this fear is what caused him to attempt to flee in scene. (Id.) Plaintiff, however, states that Defendant Dodrill never gave him any verbal commands to stop fleeing before tasing Plaintiff. (Id., pp. 2 – 3.) Plaintiff alleges that after Defendant Dodrill tased him at a high voltage for several second, Defendant Dodrill then began to choke Plaintiff and "Plaintiff felt that he had to fight for his life." (Id., p. 3.) Plaintiff states that during the struggle, Defendant Dodrill also struck Plaintiff with the baton causing the loss of two teeth. (Id.) Plaintiff alleges that Defendant Hogan "was present at the scene when Officer Brandon Dodrill used excessive force on the Plaintiff." (Id., p. 3.) Plaintiff alleges that Defendant Hogan "stood by and watched for several minutes until she decided to help Officer Brandon Dodrill further his excessive force by trying to taser the Plaintiff." (Id., pp. 3 – 4.) Plaintiff argues that "several courts have held that an officer who stand idly by and fails to prevent a fellow officer from beating the plaintiff is also liable to him." (Id., p. 4.) As an Exhibit, Plaintiff attaches a copy of the transcript from his Suppression Hearing conducted in Criminal Action No. 2:23-00142. (Document No. 25-1.) Plaintiff concludes that Defendants' Motion to Dismiss should be denied because "Plaintiff has submitted factual material supporting his claims." (Document No. 25, p. 5.)

In Reply, Defendant Hogan continues to argue that Plaintiff's Complaint must be dismissed as to Defendant Hogan. (Document No. 27, pp. 5 – 6.) Defendant Hogan argues that "[d]espite

Plaintiff's clarification of the claim, the Complaint nevertheless fails to allege any fact or requisite element necessary to establish liability upon Defendant Hogan based on the theory of bystander liability." (Id., p. 5.) Defendant Hogan asserts that Plaintiff fails to assert "any fact that would indicate Defendant Hogan knew that Dodrill was violating Plaintiff's constitution rights." (Id.) Defendant Hogan explains that from her "perspective, the traffic stop and resulting physical resistance demonstrated by Plaintiff presented Hogan with an emergency wherein her fellow officer was actively engaged in combat with Plaintiff while the vehicle's driver began to flee in the vehicle." (Id.) Defendant Hogan further notes that "Plaintiff fails to allege that Defendant Hogan took no steps to prevent harm to either Dodrill and Plaintiff." (Id.) Defendant Hogan asserts that even though Defendant Hogan "attempted to end the struggle with non-lethal and sufficient situation force," Defendant Hogan was prevented due to Plaintiff's resistance and Defendant Dodrill was tased instead of Plaintiff. (Id.) Therefore, Defendant Hogan argues that "Plaintiff has failed to assert any fact that could be liberally construed as asserting a claim of bystander liability against Defendant Hogan." (Id., p. 6.)

Generally, "a law officer may incur § 1983 liability only through affirmative misconduct." Randall v. Prince George's County, 302 F.3d 188, 202 (4th Cir. 2002) "An officer may be liable under a § 1983 theory of bystander liability 'if he: (1) knows that a fellow officer is violating an individual's constitution rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" Simmons v. Whitaker, 106 F.4th 379, 384 (4th Cir. 2024)(citing Randall, 302 F.3d at 204). "The first step in assessing the constitutionally of [the officers'] actions is to determine the relevant facts." Scott v. Harris, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

As stated above, the Court may not dismiss a Complaint where a *pro se* Complaint can be

remedied by an amendment. See Denton, 504 U.S. at 34, 112 S.Ct. at 1734; also see Goode, 807 F.3d at 630. Thus, the undersigned will consider the allegations contained in the Plaintiff's Complaint, Response in Opposition, and Exhibits. (Document Nos. 2, 25, 25-1.) In Plaintiff's Complaint and Response in Opposition, Plaintiff merely alleges that Defendant Hogan is liable based upon bystander liability because she was "on the scene" when Defendant Dodrill allegedly used excessive force. Plaintiff's allegations, however, fall short of giving rise to a reasonable inference that Defendant Hogan personally participated or acquiesced in the events that allegedly violated Plaintiff's constitutional rights. Langford v. Joyner, 62 F.4th 122, 125 (4th Cir. 2023)("requiring specific factual allegations for each defendant gives fair notice to that defendant of the plaintiff's claim and the underlying factual support"). Plaintiff's broad allegation that Defendant Hogan was on the scene at the time Defendant Hogan allegedly used excessive force is insufficient to attach personal liability. The Complaint, Response in Opposition, and Exhibits are devoid of any factual allegation or indication that Defendant Hogan knew Defendant Dodrill was violating Plaintiff's constitutional rights and failed to exercise a reasonable opportunity to intervene. Considering the Suppression Hearing transcripts as requested by Plaintiff for purposes of establishing the underlying facts, Defendant Hogan was still inside her cruiser when Plaintiff attempted to flee the scene and Defendant Dodrill tased Plaintiff. Specifically, Defendant Hogan was inside her cruiser engaging in efforts to stop the driver of the vehicle from fleeing scene because the driver attempted to flee the scene by vehicle at the same time Plaintiff started to flee on foot. Defendant Hogan stopped the fleeing vehicle by moving her cruiser to block the roadway on the driver. While Defendant Hogan was attempting to get the driver to exit the vehicle, Defendant Dodrill called out for assistance due to Plaintiff's resistance and attempts to reach inside his crossbody bag. Defendant Hogan then diverted her attention away from the driver to assist

16

Defendant Dodrill, who was actively struggling with Plaintiff. Even considering the foregoing as factual allegations, such do not establish bystander lability against Defendant Hogan. Specifically, there is no allegation or indication that Defendant Hogan (1) knew Defendant Dodrill was violating Plaintiff's constitution rights, (2) had a reasonable opportunity to prevent the harm, or (3) chose not to act. Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss (Document No. 17) be granted as to Defendant Hogan.[3]

**2.    <u>Excessive Force</u>:**

In his Complaint, Plaintiff alleges that Defendant Dodrill used excessive force by tasing him, putting him in a chokehold, and hitting him with his baton. (Document No. 2.) Plaintiff alleges that after initiating the traffic stop and directing the occupants to exit the vehicle, "Officer Dodrill began to profile [Plaintiff] and the driver and showed direct deliberate indifference by utilizing a taser gun on [Plaintiff] for 30 full seconds at up to 50,000 volts, which could have been fatal." (<u>Id.</u>) Plaintiff states that after Defendant Dodrill tased him, Defendant Dodrill "put [Plaintiff] in a chokehold and continued to choke [Plaintiff] as [Plaintiff] was struggling to verbally tell him 'I couldn't breathe.'" (<u>Id.</u>) Plaintiff alleges that Defendant Dodrill continued to choke him. (<u>Id.</u>) Finally, Plaintiff alleges that Defendant Dodrill "used other means of excessive use of force by pulling his steel extractable baton and hitting [Plaintiff] with it with such force that it caused two (2) teeth to have to be surgically removed, which also gave [Plaintiff] a broken jaw and placed [Plaintiff] in CMC (Charleston Medical Center)." (<u>Id.</u>)

In the Motion to Dismiss and Memorandum in Support, Defendant Dodrill argues he is entitled to qualified immunity. (Document No. 17 and Document No. 18, pp. 7 – 14.) First,

---

[3] There are no allegations of excessive force by Defendant Hogan. Although Plaintiff complains that Defendant Hogan deployed her taser when struggling to restrain Plaintiff, there are not factual allegations that Plaintiff was hit by the taser deployed by Defendant Hogan.

Defendant Dodrill argues he is entitled to qualified immunity because no violation of a constitutional right occurred. (Document No. 18, pp. 7 – 12.) Defendant Dodrill acknowledges that Plaintiff alleges the use of excessive force, but Defendant Dodrill contends that Plaintiff's "Complaint fails to sufficiently outline any conduct which could establish such a violation under the circumstances created by Plaintiff during the arrest." (Id., p. 8.) Defendant Dodrill argues that Plaintiff cannot satisfy the Graham factors as to establish excessive force. (Id., pp. 10 – 12.) As to the first Graham factor, Defendant Dodrill argues that "the severity of the suspected crime at issue was high as Dodrill suspected Plaintiff's involvement with or the trafficking of illegal narcotics." (Id., p. 10.) As to the second Graham factor, Defendant Dodrill asserts that he "had ample reason to believe Plaintiff posed an immediate threat to his and the public's safety." (Id., p. 11.) Defendant Dodrill argues that "a reasonable officer could have believed Plaintiff was armed based on his behavior and thus posed an immediate threat based upon Plaintiff's suspicious conduct before exiting the vehicle." (Id.) Defendant Dodrill argues that "[s]ince Plaintiff refused to comply with basic commands and the subsequently fled from Dodrill, the immediate safety risks to responding officers and the public were reasonably calculated to be cured by using the taser and subsequently the baton to subdue Plaintiff." (Id.) Considering the third Graham factor, Defendant Dodrill contends that Plaintiff was actively resisting arrest. (Id.) Defendant Dodrill contends that considering the "corresponding criminal action and factual basis underlying such charges, Plaintiff disregarded commands while inside the vehicle, attempted to flee the scene, further disregarded commands to stop, subsequently engaged in hand to hand combat with Officers Dodrill and Hogan, and then resorted to exposing these officers to Fentanyl in an effort to escape." (Id.) Considering the last Graham factor, Defendant Dodrill notes the only injury asserted by Plaintiff was the loss of two teeth and a broken jaw. (Id., p. 12.) Defendant Dodrill notes that these "injuries only

18

occurred after Plaintiff engaged in strenuous combat and utilized Fentanyl in his fight with Officers Dodrill and Hogan." (Id.) Thus, Defendant Dodrill argues that the Court should "find that the totality of the circumstances here justifies the requisite force that Plaintiff necessitated by his own conduct." (Id.) Defendant Dodrill, therefore, argues that he is entitled to qualified immunity because his conduct did not violate Plaintiff's constitutional rights. (Id.)

In the alternative, Defendant Dodrill contends that "[e]ven if a constitutional right was violated, Plaintiff's asserted right was not clearly established." (Id., pp. 13 – 14.) First, Defendant Dodrill contends "[i]t is not clear from applicable precedent that a suspect, who acts strangely, refuses to comply with police directives to exit a vehicle, flees from police, and then again refuses to comply with directives has a right not to be tased." (Id.) Second, Defendant Dodrill asserts that "after all of the aforementioned occurrences, and after engaging in physical combat with Dodrill and Hogan, and after exposing officers to illegal substances, it is not clear that Plaintiff has a right not to be subdued by way of utilizing a baton." (Id.) Defendant Dodrill concludes that "the Court must determine whether, as of September 27, 2022, that relevant precedent established an officer's use of a taser and baton were objectively unreasonable and therefore constitutionally excessive when used against a fleeing suspect who is believed to be armed, who then becomes physically resistant, attacks two police officers, given no indication that he will yield, and further utilized illegal narcotics to assist in his escape." (Id., p. 14.)

In Response, Plaintiff again requests that the Court "take judicial notice of the facts contained in the public documents in the associated criminal action in federal Criminal No. 2:23-cr-00142 as it pertains to the instant claims of the Plaintiff . . . and both of the Defendants." (Document No. 25, p. 1.) Plaintiff continues to claim that Defendant Dodrill used unnecessary and excessive force because "Plaintiff was tased and choked and also hit with a baton." (Id., p. 2.)

Plaintiff alleges that from the beginning of the "illegal traffic stop," he was in fear for his life because "Black American have been afraid of police due to mass police killings and brutality." (Id.) Plaintiff contends that this fear is what caused him to attempt to flee in scene. (Id.) Plaintiff states that at the time he attempted to flee, Plaintiff was not under arrest. (Id.) Plaintiff contends he was merely a passenger of a vehicle subjected to a traffic stop and Defendant Dodrill had no reason to hold him at the scene of the traffic stop. (Id.) Plaintiff states that when he attempted to flee the scene due to fear, Defendant Dodrill never gave Plaintiff any verbal commands to stop before tasing Plaintiff. (Id., pp. 2 – 3.) Plaintiff states that "[i]nstead [Defendant Dodrill] took out his taser and immediately shot and tased the Plaintiff without provocation." (Id.) Plaintiff alleges that after Defendant Dodrill tased him at a high voltage for several second, Defendant Dodrill then began to choke Plaintiff and "Plaintiff felt that he had to fight for his life." (Id., p. 3.) Plaintiff states that during the struggle, Defendant Dodrill also struck Plaintiff with the baton causing the loss of two teeth and a broken jaw. (Id.) As an Exhibit, Plaintiff attaches a copy of the transcript from his Suppression Hearing conducted in Criminal Action No. 2:23-00142. (Document No. 25-1.) Plaintiff concludes that Defendants' Motion to Dismiss should be denied because "Plaintiff has submitted factual material supporting his claims." (Document No. 25, p. 5.)

In Reply, Defendant Dodrill contends that Plaintiff acknowledges that he fled the traffic stop, resisted efforts by Defendant Dodrill to conduct the traffic stop, and engaged in active combat with Defendants. (Document No. 27, p. 2.) Defendant Dodrill argues that Plaintiff's "attempts to provide justifications for his conduct . . . conflict with reality and the facts underlying this action." (Id.) Defendant Dodrill contends that Plaintiff's assertion that the stop was predicated on an alleged impermissible profiling of the Plaintiff is without merit because Defendant "Dodrill's testimony makes clear [that] he was unable to see the occupants in the vehicle before making the traffic

stop."[4] (Id., p. 3.) Defendant Dodrill claims it is "easily discernable" that "the vehicle occupied by Plaintiff was stopped for a litany of reasons and the occupants were subsequently asked to exit the vehicle based upon additional factors including the smell of marijuana emanating from the vehicle, issues with the vehicle's occupants' identification and licensure, and finally the occupants' nervous demeanor." (Id.) Defendant Dodrill asserts that "the traffic stop at issue was routine in every respect until the Plaintiff made the conscious decision to flee, to actively engage in hand-to-hand combat with Defendant Dodrill, and to use illegal narcotics in an effort to escape." (Id.) Defendant Dodrill disputes that Plaintiff's decision was to flee and physical resist was the result of fear. (Id., p. 3 - 4.) Defendant Dodrill argues that Plaintiff's decision to flee and resist was because "Plaintiff had an active arrest warrant[5] and was in possession of a substantial amount of illegal narcotics." (Id., p. 4.) Defendant Dodrill concludes that the "inescapable truth of this matter is that Plaintiff's conduct necessitated physical intervention and escalating levels of force in an effort to subdue and detain the Plaintiff." (Id.)

A "claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [a] person" is properly analyzed under the Fourth Amendment's objective reasonableness' standard." Graham v. Connor, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Fourth Amendment prohibits unreasonable seizures, which includes the right to be free of "seizures effectuated by excessive force." Schultz v. Braga, 455 F.3d 470, 476 (4th Cir. 2006). Courts analyze whether an officer has used excessive force under a standard of objective reasonableness. Scott v. Harris, 550 U.S. 372, 381, 127 S.Ct. 1769,

---

[4] The undersigned notes that Plaintiff appears to allege he was profiled after the traffic stop was initiated and Defendant Dodrill made contact with Plaintiff.

[5] The record reveals that Defendant Dodrill was unaware of the active arrest warrant at the time of the traffic stop.

167 L.Ed.2d 686 (2007); also see Jones v. Buchanan, 325 F.3d 520, 527 (4ᵗʰ Cir. 2003)(force is excessive when it exceeds the bounds of "objective reasonableness"). An officer's subjective intent or motivation is irrelevant. Id. Courts must consider "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "[A] Court must focus on the moment the force is employed." Henry v. Purnell, 652 F.3d 524, 531 (4ᵗʰ Cir. 2011); also see Graham, 490 U.S. at 397, 109 S.Ct. 1865(Courts must make "allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving"). "Evaluating the reasonableness of the officer's actions 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests at stake.'" Smith v. Ray, 781 F.3d 95, 101 (4ᵗʰ Cir. 2015)(citing Graham, 490 U.S. at 396, 109 S.Ct. 1865). In assessing the reasonableness of the force, a Court should "view it in full context, with an eye toward the proportionality of the force in light of all the circumstances." Waterman v. Batton, 393 F.3d 471, 481 (4ᵗʰ Cir. 2005); also see Tennessee v. Garner, 471 U.S. at, 8 – 9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)(Courts should decide "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure"). Giving "careful attention to the facts and circumstances of each particular case," Courts should consider the following factors: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." Smith, 781 F.3d at 101(citing Graham, 490 U.S. at 396, 109 S.Ct. 1865.). The test considers whether the totality of the circumstances justifies the force used during the seizure. Jones v. Buchanan, 325 F.3d 520, 527-28 (4ᵗʰ Cir. 2003). A court must also consider that officers often

make "split second judgment - - in circumstances that are tense, uncertain, and rapidly evolving - - about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397, 109 S.Ct. 1865.

When a *pro se* Complaint can be remedied by an amendment, the District Court may not dismiss the Complaint with prejudice but must permit the amendment. Denton, 504 U.S. at 34, 112 S.Ct. at 1728; also see Goode, 807 F.3d at 619. The undersigned finds that viewing Plaintiff's Complaint liberally, and considering the additional facts contained in his Response and Exhibits, Plaintiff has made ample allegations of the use of unnecessary and excessive force by Defendant Dodrill in violation of the Fourth Amendment. Plaintiff indicates that Defendant Dodrill had no grounds to arrest Plaintiff when Plaintiff exited the vehicle and attempted to flee the scene, but Defendant Dodrill used excessive force by tasing Plaintiff after Plaintiff took only seven steps and without giving Plaintiff any verbal commands to stop. At the time Plaintiff was initially tased, Plaintiff indicates he was not an immediate danger to Defendant Dodrill or the public making tasing a justifiable use for force to stop Plaintiff from leaving the scene. Smith, 781 F.3d at 102-03(holding that an officer punching and throwing an arrestee to the ground because she "took only a single step back off of the small stoop in front of the door" and "pulled her arm away" during an attempted handcuffing was excessive force); Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst, 810 F.3d 892, 902 (4th Cir. 2016)(finding that deploying a taser is a "serious use of force" and "[o]ur precedent . . . makes clear that tasers are proportional force only when deployed in response to a situation in which a reasonable officer would perceive some immediate danger that could be mitigated by using the taser.") Plaintiff alleges that after Defendant Dodrill tased him for 30 seconds, Defendant Dodrill put Plaintiff in a chokehold. Plaintiff states that Defendant Dodrill continued choking him even though Plaintiff informed Defendant Dodrill that Plaintiff "could not

breathe" and "you're going to kill me." Plaintiff appears to acknowledge some resistance, but Plaintiff states that such resistance was in response to his difficulty breathing and his fear for his life. Thus, Plaintiff indicates that Defendant Dodrill's use of a chokehold escalated the situation causing Plaintiff to resist. Plaintiff then contends that Defendant Dodrill struck him in the face with a baton resulting in a broken jaw and the loss of two teeth. See Estate of Armstrong, 810 F.3d at 901("Noncompliance with lawful orders justifies some use of force, but the level of justified force varies based on the risks posed by the resistance.") It is unclear from the allegations or Exhibits as to whether and how Plaintiff was resisting at the time Defendant Dodrill used the baton. Although Defendant Dodrill wishes for the Court to gather facts from documents filed in Plaintiff's underlying criminal proceedings and find such documents conclusively prove Plaintiff cannot state a cognizable claim, the undersigned declines to do so. Although the facts contained in some of the documents filed in the underlying criminal proceedings are favorable to Defendant Dodrill, such facts do not allow this Court to conclusively find that Plaintiff cannot state a cognizable claim. The undersigned further declines to weigh the credibility of the parties. The undersigned concludes that Plaintiff's Complaint can be remedied by allowing Plaintiff an opportunity to amend his allegations to state additional facts in support of his claim. The undersigned, therefore, respectfully recommends that Defendant Dodrill's Motion to Dismiss be denied to the extent Defendant Dodrill argues that Plaintiff fails to allege a plausible Fourth Amendment claim of excessive force. The undersigned further recommends that Plaintiff be allowed to amend his Complaint to include additional specific factual allegations concerning Defendant Dodrill's actions, and allege, with some degree of particularity, how Defendant Dodrill subjected Plaintiff to unnecessary and excessive force in violation of the Fourth Amendment.

To the extent Defendant Dodrill requests dismissal of Plaintiff's Eighth Amendment claim

of excessive force, the undersigned recommends that Defendant Dodrill's Motion to Dismiss be granted. As explained above, the Fourth Amendment is the applicable to a "claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [a] person" is properly analyzed under the Fourth Amendment's objective reasonableness' standard." Graham, 490 U.S. at 388, 109 S.Ct. 1865; also seee Tolan v. Cotton, 572 U.S. 650, 656, 134 S.Ct. 1861, 1865, 188 L.Ed.2d 895 (2014)("When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures."). The Eighth Amendment prohibits the use of excessive force against a prisoner. See Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). There is no allegation or indication that Plaintiff was a prisoner at the time Defendant Dodrill's allegedly subjected Plaintiff to unnecessary and excessive force. Accordingly, the undersigned respectfully recommends that Defendant Dodrill's Motion to Dismiss be granted as to Plaintiff's Eighth Amendment excessive force claim.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT in part and DENY in part** Defendants' Motion to Dismiss (Document No. 17). Specifically, it is **RECOMMENDED** as follows: (1) Defendants' Motion to Dismiss (Document No. 17) be **GRANTED** as to Defendant Hogan; (2) Defendants' Motion to Dismiss (Document No. 17) be **GRANTED** as to Plaintiff's Eighth Amendment excessive force claim against Defendant Dodrill; (3) Defendants' Motion to Dismiss (Document No. 17) be **DENIED** as to Plaintiff's Fourth Amendment excessive force claim against Defendant Dodrill; (4) **GRANT** Plaintiff permission to amend his Complaint to include the additional facts to support

his Fourth Amendment excessive force claim; and (5) **REFER** the matter back to the undersigned for further proceedings.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: July 3, 2025.



Omar J. Aboulhosn
United States Magistrate Judge