**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **KEITH DESHON ADAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 2:24-00315** |
| | ) | |
| **BRANDON DODRILL, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>PROPOSED FINDINGS AND RECOMMENDATION</u>**

Pending before the Court is Defendant Dodrill's Motion to Dismiss (Document No. 39), filed on December 18, 2025. The Court notified Plaintiff pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendant Dodrill's Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendant Dodrill in moving to dismiss. (Document No. 41.) Plaintiff filed his Response in Opposition on January 12, 2026. (Document No. 42.) On January 13, 2026, Plaintiff filed a document entitled "Both Amended Complaint and Response to Defendant's Motion to Dismiss."[1] (Document No. 43). On January 16, 2026, Defendant Dodrill filed his Reply to Plaintiff's Response in Opposition. (Document No. 46.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendant Dodrill's Motion to Dismiss (Document No. 39) should be granted.

**<u>PROCEDURAL BACKGROUND</u>**

---

[1] By separate Order entered this day, the undersigned construed the foregoing as a Motion to Amend/Supplement Plaintiff's Amended Complaint and granted such. The undersigned directed that the Clerk re-docket the document entitled "Both Amended Complaint and Response to Defendant's Motion to Dismiss" as Plaintiff's "Supplement to Amended Complaint and Response in Opposition."

On June 26, 2024, Plaintiff, acting *pro se,* filed his Application to Proceed Without Prepayment of Fees and Costs and a Complaint claiming entitlement to relief under 42 U.S.C. §1983.[2] (Document Nos. 1 and 2.) In his Complaint, Plaintiff names the following as Defendants: (1) Brandon Dodrill, Oak Hill Police Officer; and (2) Tyler Hogan, Oak Hill Police Officer. (Id., p. 2.) Plaintiff alleges that Defendants Dodrill and Hogan violated his rights under the Eighth and Fourth Amendments. (Id.) Specifically, Plaintiff contends that Defendant Dodrill subjected him to unnecessary and excessive force. (Id.) Plaintiff alleges that Defendant Hogan is liable based upon bystander liability because Defendant Hogan knew Defendant Dodrill was using excessive force and she failed to intervene to protect Plaintiff from the use of unnecessary and excessive force by Defendant Dodrill. (Id.) In support, Plaintiff states as follows:

> On or about 9-27-22, I was a passenger in a vehicle that was pulled over. At that time, Officer Brandon Dodrill approached the vehicle and asked for license and registration without any real probable cause. Ofc. Dodrill then asked myself and the driver of the vehicle to step out. At that time, Officer Dodrill began to profile myself and the driver and showed direct deliberate indifference by utilizing a taser gun on me for 30 full seconds at up to 50,000 volts, which could have been fatal. After he tased me, he then put me in a chokehold and continued to choke me as I was struggling to verbally tell him "I couldn't breathe." In which he kept on choking me. At that time is when I noticed Officer Tyler Hogan on the scene. The whole incident was captured on bodycam footage. This incident took place in Oak Hill, West Virginia, on Route 19 and Summerlee Road. Also, Officer Dodrill used other means of excessive use of force by pulling his steel extractable baton and hitting me with it with such force that it caused two (2) teeth to have to be surgically removed, which also gave me a broken jaw and placed me in CMC (Charleston Medical Center). I was charged a substantial medical bill . . . which I cannot afford to pay due to injuries from the excessive use of force by Officer Dodrill violating my 8th Amendment Rights and also the 4th Amendment.

(Id.) Plaintiff requests injunctive and monetary relief. (Id., pp. 5 – 6.) By Order entered on June

---

[2]  Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

27, 2024, the undersigned found Plaintiff's Application to Proceed Without Prepayment of Fees and Costs to be deficient because the Application was unsigned by Plaintiff. (Document No. 4.) The undersigned directed that Plaintiff's Application be returned to him, Plaintiff submit a complete Application including his signature, and return such by June 29, 2024. (Id.) On July 8, 2024, Plaintiff filed his signed Application to Proceed Without Prepayment of Fees and Costs. (Document No. 5.) By Order entered on January 7, 2025, the undersigned granted Plaintiff's Applications to Proceed Without Prepayment of Fees and directed the Clerk to issue process. (Document No. 8.) The Clerk's Office issued process the same day. (Document No. 9.)

On February 3, 2025, Defendants filed a Motion to Dismiss and Memorandum in Support. (Document Nos. 17 - 18.) Defendants argued that Plaintiff's claims should be dismissed based on the following: (1) "Plaintiff has failed to state facts or a legal claim upon which relief can be granted and the Complaint must be dismissed as to Tyler Hogan pursuant to *Iqbal/Twombly*" (Document No. 18, pp. 6 – 7); and (2) Defendants Dodrill and Hogan are entitled to qualified immunity for Plaintiff's claims (Id., pp. 7 – 14). Notice pursuant to Roseboro was issued to Plaintiff on February 4, 2025, advising him of the right to file a response to the Defendants' Motion to Dismiss. (Document No. 19.) On May 6, 2025, Plaintiff filed his Response in Opposition. (Document No. 25.) By Proposed Findings and Recommendation ("PF&R") entered on July 3, 2025, the undersigned recommended that the District Court grant in part and deny in part Defendants' Motion to Dismiss. (Document No. 28.) Specifically, the undersigned recommended the following:

> (1) Defendants' Motion to Dismiss (Document No. 17) be **GRANTED** as to Defendant Hogan; (2) Defendants' Motion to Dismiss (Document No. 17) be **GRANTED** as to Plaintiff's Eighth Amendment excessive force claim against Defendant Dodrill; (3) Defendants' Motion to Dismiss (Document No. 17) be **DENIED** as to Plaintiff's Fourth Amendment excessive force claim against Defendant Dodrill; (4) **GRANT** Plaintiff permission to amend his Complaint to

3

include the additional facts to support his Fourth Amendment excessive force claim; and (5) **REFER** the matter back to the undersigned for further proceedings.

(Id.) No objections were filed. By Memorandum Opinion and Order entered on July 25, 2025, United States District Judge Irene C. Berger adopted the undersigned's PF&R, granted the Motion to Dismiss as to Defendant Hogan, granted the Motion to Dismiss as to Plaintiff's Eighth Amendment excessive force claim against Defendant Dodrill, denied the Motion to Dismiss as to Plaintiff's Fourth Amendment excessive force claim against Defendant Dodrill, and granted Plaintiff "a period of twenty (20) days from the entry of this order to amend his Complaint to include additional facts to support his Fourth Amendment excessive force claim." (Document No. 29.)

Nearly three months passed since the entry of District Judge Berger's Memorandum Opinion and Order and Plaintiff did not file an Amended Complaint. After noting Plaintiff's lack of activity in this case, the undersigned issued an Order on October 17, 2025, directing Plaintiff to "show cause in writing on or before October 30, 2025, as to why this civil action should not be dismissed for failure to prosecute." (Document No. 33.) The undersigned specifically notified Plaintiff that "failure to show cause in writing by October 30, 2025, will result in a recommendation of dismissal of this matter pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Rule 41.1 of the Local Rules of Civil Procedure for the Southern District of West Virginia." (Id.) On November 3, 2025, Plaintiff filed a "Motion Pursuant to Rule 60(b)(6)." (Document No. 34.) By Order entered on November 10, 2025, the undersigned denied Plaintiff's Rule 60(b)(6) Motion noting that there had been no final order entered closing the above action. (Document No. 36.) To the extent Plaintiff intended the foregoing to be a Response to the Court's show cause Order, the undersigned determined that Plaintiff had shown good cause as to why the above action should not be dismissed for failure to prosecute. (Id.) Specifically, Plaintiff stated

4

that he never received Judge Berger's Memorandum Opinion and Order that directed Plaintiff to file his Amended Complaint within 20 days. (Id.) Accordingly, the undersigned directed Plaintiff to file his Amended Complaint by December 8, 2025. (Id.)

On December 11, 2025, Plaintiff filed his Amended Complaint against Defendant Dodrill. (Document No. 38.) Plaintiff alleges that Defendant Dodrill violated his rights under the Fourth Amendments by subjecting Plaintiff to unnecessary and excessive force on September 27, 2022. (Id., pp. 1 – 2.) Plaintiff explains that he was the passenger in a vehicle that was stopped by Defendant Dodrill for illegal window tint. (Id., p. 2.) Plaintiff acknowledges that it is "not in dispute that Plaintiff ran from Defendant [Dodrill] when Plaintiff stepped out of the vehicle." (Id.) Plaintiff states that "[t]he record clearly shows the fact after the aforesaid Defendant violated Plaintiff's constitutional rights, i.e. Fourth Amendment (excessive force)." (Id.) Plaintiff alleges that "Defendant [Dodrill] did not give any commands to Plaintiff to stop running from Defendant prior to Defendant's action of tasing Plaintiff." (Id.) Plaintiff states that he was "temporarily subjected to total paralysis, which cause Plaintiff to fall to the ground." (Id., pp. 2 – 3.) Plaintiff claims he was "subdue by Defendant after Defendant tased Plaintiff [and] in doing so, Defendant caused injuries to Plaintiff's person, i.e. face (beaten with a baton)." (Id., p. 3.) Plaintiff alleges that "[e]ven after the fact of Defendant subduing Plaintiff on the ground, Defendant then placed Plaintiff in a chokehold causing Plaintiff to not be able to breathe." (Id., pp. 3 – 4.) Plaintiff claims that even though Defendant Dodrill initially "falsely stated that he (Defendant) did not choke Plaintiff," Defendant Dodrill latter "admitted to choking Plaintiff to the point where Plaintiff could not breathe." (Id., p. 4.) Plaintiff argues that "Defendant's action in choking Plaintiff while Plaintiff was subdued, stand in violation of the law (Fourth Amendment)." (Id.) Plaintiff argues that Defendant Dodrill is not entitled to qualified immunity because at the time of Defendant Dodrill's

use of force "it was clearly established that law enforcement may not constitutionally use force." (Id., pp. 4 – 7.) Plaintiff states that he suffered the following injuries as a result of Defendant Dodrill's use of excessive force: (1) 3 cm laceration to the left side of the cheek; and (2) left zygomatic arch fracture. (Id., pp. 8 – 9.) As relief, Plaintiff requests "the sum of $2,000,000 compensatory [damages] and $6,000,000 punitive [damages]." (Id., p. 10.) As Exhibits, Plaintiff attaches the following: (1) A photograph from bodycam video showing Plaintiff falling to the ground (Document No. 38-1); and (2) A photograph from bodycam video showing Plaintiff in a chokehold (Document No. 38-2).

On December 18, 2025, Defendant Dodrill filed a Motion to Dismiss and Memorandum in Support. (Document Nos. 39 - 40.) Defendant Dodrill argues that Plaintiff's claims should be dismissed based on the following: (1) "Plaintiff's Amended Complaint is devoid of necessary facts required by pleading standards of the Federal Rules of Civil Procedure and established by *Iqbal/Twombly*" (Document No. 40, pp. 8 – 9); and (2) Defendants Dodrill is entitled to qualified immunity for Plaintiff's claims (Id., pp. 10 – 18). As Exhibits, Defendant Dodrill attaches the following: (1) A copy of the bodycam video (Document Nos. 40-1 and 53)[3]; and (2) A copy of the "Criminal Complaint" filed against Plaintiff in the Magistrate Court of Fayette County (Document No. 40-2)[4]. Notice pursuant to Roseboro was issued to Plaintiff on December 19, 2025, advising

---

[3] In his Motion to Dismiss, Defendant Dodrill attaches a copy of body camera videographic evidence of the underlying incident. The Fourth Circuit has held that a district court may consider a video recording submitted at the motion to dismiss stage, without converting the motion to one for summary judgment, "when (1) the video is 'integral' to the complaint and its authenticity is not challenged, but (2) only to the extent that the video 'clearly depicts a set of facts contrary to those alleged in the complaint,' or 'blatantly contradicts' the plaintiff's allegations, rendering the plaintiff's allegations implausible." *Doriety v. Sletten*, 109 F.4th 670, 679-80 (4th Cir.2025)(quoting *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024)). The undersigned notes that Plaintiff does not challenge the authenticity or completeness of the video recording, and the video recording is embraced by the pleadings. See Fed. R. Civ. P. 12(b)(6). Further, Plaintiff relies on screenshots from the video and additional materials have been referenced and incorporated into the Amended Complaint. Finally, the video clearly depicts a set of facts contrary to those alleged in Plaintiff's Amended Complaint.

[4] In Defendant Dodrill's Motion to Dismiss, Defendant attaches a copy of pertinent documents filed in criminal

6

him of the right to file a response to Defendant Dodrill's Motion to Dismiss. (Document No. 41.)

On January 12, 2026, Plaintiff filed his Response in Opposition. (Document No. 42.) As an

Exhibit, Plaintiff attaches a copy of Defendant Dodrill's medical records from the emergency

department. (Document No. 42-1.) On January 13, 2026, Plaintiff files an Amendment to Both

Amended Complaint and Response to Defendant's Motion to Dismiss. (Document No. 43.) As

Exhibit, Plaintiff attaches a copy of his medical records concerning a nephrology consult.

(Document No. 43-1.) On January 16, 2026, Defendant Dodrill filed a Reply to Plaintiff's

Response in Opposition. (Document No. 46.)

## FACTUAL BACKGROUND

### A.    *Information from Criminal Complaint filed in Magistrate Court of Fayette County:*

According to the sworn Criminal Complaint prepared by Officer William Willis, Plaintiff

was arrested on September 27, 2022, in Oak Hill, West Virginia (*State v. Adams*, Case No. 22-

---

proceedings stemming from Plaintiff's arrest. The undersigned, however, finds that these documents are not documents outside the pleadings requiring the conversion of the motion to dismiss into a motion for summary judgment. In reviewing the sufficiency of a complaint, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); *also see Wittholh v. Federal Insurance Co.*, 164 Fed.Appx. 395, * 1 (4th Cir. 2006)(when considering a motion to dismiss, "a court may consider official public records"); *Pueschel v. United States*, 369 F.3d 345, 354 n. 3 (4th Cir. 2004)("If, on a motion . . . to dismiss . . . matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56"); *American Chiropractic Association v. Trigon Health Care, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)("[W]hen a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiff's do not challenge its authenticity."); *White v. Marsh*, 2014 WL 4418193 (S.D.W.Va. Sept. 8, 2014)(J. Johnston)(citations omitted)("Several circuits, including the Fourth, have recognized that a court may in addition consider documents attached to a motion to dismiss when they are "integral to and explicitly relief on in the complaint and . . . the plaintiffs do not challenge [their] authenticity."); *McDowell v. Town of Sophia*, 2012 WL 3778837 (S.D.W.Va. Aug. 30, 2012)(J. Berger)(citations omitted)("In addressing a motion to dismiss, the court may consider a plaintiff's factual allegations made in the complaint, any exhibits attached thereto, documents attached to the motion to dismiss that are authentic and integral to the complaint, and any matters of public record of which the court may take judicial notice."); *but see Zavolta v. Henderson*, 2011 WL 1790492, * 2 (N.D.W.Va. May 10, 2011)("Affidavits are document outside the pleadings and this Court must convert the motion to dismiss to a motion for summary judgment if it is to consider the . . . affidavits.") In the instant case, Plaintiff's does not dispute that the conduct underlying the Amended Complaint resulted in State and Federal criminal charges <u>and</u> such are public record the Court may take judicial notice. Further, Plaintiff does not challenge the authenticity of these documents. The undersigned, therefore, will consider this document without converting Defendant Dodrill's Motion to Dismiss into one for summary judgment.

MIOF-00220(Mag. Ct. of Fayette Co.). (Document No. 17-1.) Defendant Dodrill, a Patrol Officer with the Oak Hill City Police Department, was on patrol when he observed a blue Buick with Arizona plates (HEA9D5A) leaving the residence of John Hancock (169 Crawford Street). (Id.) The Oak Hill City Police Department, the West Virginia State Police, and the Fayette County Sheriff's Office had previously received several complaints regarding Mr. Hancock, his residence, and the sale and delivery of controlled substances. (Id.) Upon observing the vehicle and being unable to see inside the vehicle due to extremely dark window tint, Defendant Dodrill initiated a traffic stop based on the suspected violation of W. Va. Code § 17C-15-36A (Sun-screening devices). (Id.) As Defendant Dodrill began the traffic stop, the subject vehicle passed several places to safely pull over and was slow to stop. (Id.) Once the subject vehicle pulled over, Defendant Dodrill requested the assistance of a nearby officer (Defendant Hogan). (Id.) Immediately upon making contact with the occupants of the subject vehicle, Defendant Dodrill detected the odor of marijuana coming from the vehicle. (Id.) Then neither occupant of the vehicle could locate the vehicle's registration and insurance cards, and it became clear that neither occupant owned the subject vehicle. (Id.) Based on the foregoing factors, Defendant Dodrill requested the occupants exit the subject vehicle and stand in front of his police cruiser. (Id.) Both occupants delayed exiting the subject vehicle and appeared nervous. (Id.) As Plaintiff exited the passenger side of the subject vehicle, Plaintiff was observed to be doing something in the floorboard and inside the lower door pocket. (Id.) Defendant Dodrill further observed Plaintiff wearing a crossbody bag, making movements indicating a desire to flee, and then suddenly running away from the vehicle. (Id.) After Plaintiff ignored several verbal commands to stop from Defendant Dodrill, Defendant Dodrill deployed a single shot from his taser striking Plaintiff in the back. (Id.) As a result, Plaintiff fell forward onto the pavement. (Id.) When the taser cycle ended,

Plaintiff immediately attempted to get up. (Id.) Defendant Dodrill initiated another cycle of the taser in an effort to gain control of the situation. (Id.) As Defendant Dodrill was trying to secure handcuffs on Plaintiff, Plaintiff continued to ignore commands to stop resisting by continuing to resist, physically fighting, and attempting to reach inside his bag. (Id.) Defendant Dodrill then calls out to Defendant Hogan for assistance in restraining Plaintiff. (Id.) During the struggle, Plaintiff was able to retrieve a baggie containing an unknown powder substance from his crossbody bag. (Id.) Plaintiff managed to tear open the baggie, placed the baggie to Defendant Dodrill's head, and squeezed the baggie causing the contents to go into the face of Defendant Dodrill. (Id.) Defendant Dodrill retreated from the struggle to get out of the powder, but Defendant Hogan continued to struggle with Plaintiff. (Id.) Defendant Hogan continued to struggle with Plaintiff until she was finally able to subdue and apprehend Plaintiff. (Id.) Defendant Dodrill then advised Defendant Hogan that he thought he was overdosing. (Id.) Defendant Hogan administered a dose of Narcan to Defendant Dodrill and was starting to give him a second does when she became overcome by the substance that Plaintiff deployed while resisting arrest. (Id.) A local nurse driving by the scene of the incident stopped upon seeing the officers in distress, and the nurse administrated Narcan to both Defendants. (Id.) As a result, both Defendants Dodrill and Hogan required transportation by EMS to the local hospital for treatment for fentanyl overdose. (Id.) During Defendants Dodrill and Hogan's attempt to restrain Plaintiff, the driver of the subject vehicle fled the traffic stop. (Id.) At the time of Plaintiff's above arrest, he was a wanted fugitive for violation of federal parole out of Virginia. (Id.)

**B.      *Information from Federal Indictment, Suppression Hearing, the United States' Sentencing Memorandum, and Plaintiff's Plea Agreement in Criminal Action No. 2:23-00142:***

As a result of the traffic stop and arrest, Plaintiff was found to be in the possession of 17.8

9

grams of methamphetamine "ice," 49.92 grams of methamphetamine mixture, 148.64 grams of fentanyl, and 1.05 grams of cocaine. (Document No. 17-2, p. 3.) Based upon the foregoing, Plaintiff was charged by a single-count Indictment in United States District Court for the Southern District of West Virginia with possession with the intent to distribute 5 grams or more of methamphetamine and a quantity of fentanyl in violation of 21 U.S.C. § 841(a)(1) (Criminal Action No. 2:23-00142). (Id., p. 22.)

During the Suppression Hearing, Defendant Dodrill testified he was patrolling "Hell Holler" on the day of Plaintiff's arrest. (Document No. 25-1, pp. 8 – 9, 27.) Defendant Dodrill explained that the area was known as "Hell Holler" because it is "an extreme problem area" for drug activity. (Id., p. 9.) Defendant Dodrill stated he observed a vehicle with Arizona plates with extremely dark window tint parked at the residence of a suspected drug dealer. (Id., p. 12.) Defendant Dodrill explained that he initiated a traffic stop due to dark window tint and the vehicle delayed stopping by passing a couple of safe pull off areas before actually stopping. (Id., pp. 18 – 19.) Defendant Dodrill stated that he then requested Defendant Hogan "to swing in behind [him] just because of the delayed stop and coming from . . . a narcotics area." (Id., pp. 19 – 20.) Defendant Dodrill explained he approached the vehicle, informed the driver he was stopped for dark window tint, and asked for "license, registration, and insurance." (Id., p. 20.) Defendant Dodrill noted there were only two individuals in the vehicle and he immediately noticed the smell of marijuana coming from inside the vehicle. (Id.) Defendant Dodrill testified that both occupants produced identification cards, and at that time, he was not aware that Plaintiff's identification card did not match Plaintiff. (Id., p. 45.) Defendant Dodrill explained that due to the occupants appearing nervous and failing to produce the insurance and registration cards, he asked the occupants to exit the vehicle and stand in front of his cruiser. (Id., pp. 20 – 21.) Defendant Dodrill stated that both

occupants delayed getting out of the vehicle and once Plaintiff exited the passenger side, Plaintiff "looks around a little bit," and "then all of a sudden, he takes off running toward the front of the vehicle up the roadway." (Id., p. 24.) Defendant Dodrill testified that he immediately began chasing after Plaintiff and deployed a single shot from his taser into Plaintiff' back causing Plaintiff to fall to the ground. (Id.) Defendant Dodrill testified that Plaintiff took approximately seven steps before Defendant Dodrill tased Plaintiff and that Defendant Dodrill gave no verbal commands before tasing Plaintiff. (Id., pp. 46 – 47.) Defendant Dodrill further acknowledged that his police report inaccurately stated that he gave Plaintiff verbal commands to stop prior to tasing him. (Id., p. 47.) Defendant Dodrill stated that he deployed a second taser shot when Plaintiff was trying to get up and attempting to reach inside a crossbody bag. (Id., pp. 25 and 60.) Considering both taser shots, Defendant Dodrill testified that Plaintiff was tased for a total of 30 seconds. (Id., pp. 48 and 60.) Defendant Dodrill acknowledged that in response to the second taser shot, Plaintiff stated "You're going to kill me." (Id., p. 48.) Defendant Dodrill stated he got on top of Plaintiff in an attempt to subdue him, but Plaintiff continued resisting and attempting to reach inside the crossbody bag. (Id.) Defendant Dodrill testified he was concerned that Plaintiff had a gun or weapon inside the bag. (Id., pp. 48 and 60.) Defendant Dodrill acknowledged that during the struggle, he reached across Plaintiff's chest in an attempt to subdue him and eventually put Plaintiff in a chokehold. (Id., pp. 49 – 52.) Defendant Dodrill verified that throughout his struggle with Plaintiff, Plaintiff stated several times that he could not breathe. (Id., pp. 51 and 52.) Defendant Dodrill, however, explained that while Plaintiff was saying he could not breathe, Plaintiff was "still actively resisting, fighting with two police officers, and [was] actually able to push off the ground with two police officers on his back." (Id., p. 61.)

Defendant Dodrill testified that initially Defendant Hogan was acting merely as a

11

"backing officer" and she did not exit her cruiser when Defendant Dodrill made contact with occupants of the vehicle. (Id., pp. 26 – 27.) Defendant Dodrill stated that when Plaintiff "took off running, the driver of the vehicle then attempted to flee in the vehicle by making a U-turn across the roadway, at which time Corporal Hogan pulled her vehicle across the roadway to block him." (Id., pp. 26, 29.) Defendant Dodrill explained that when Plaintiff continued resisting and attempting to reach inside the crossbody after the second taser shot, Defendant Dodrill called out for Defendant Hogan's assistance. (Id., p. 25.) Defendant Dodrill stated that when he called out for assistance, Defendant Hogan disengaged with the driver, the driver fled the scene in the vehicle, and Defendant Hogan joined the struggle to restrain Plaintiff. (Id., pp. 26 - 27.) Defendant Dodrill testified that he was able to get one handcuff on one of Plaintiff's arms, but Plaintiff continued to resist and attempt to reach inside the crossbody bag. (Id.) Defendant Dodrill stated that Plaintiff was able to retrieve a bag of white powder from the crossbody bag. (Id.) Defendant Dodrill explained that he was overtop of Plaintiff's back with his head over Plaintiff's left shoulder when Plaintiff used his left fingernail to rip the bag open and then squeezed the bag causing a cloud of white powder to expel into Defendant Dodrill's face. (Id., pp. 27 – 28.) Defendant Dodrill stated that the white powder was on his face, in his hair and beard, and on his vest. (Id., p. 28.) Defendant Dodrill explained that at this point, he pushed himself back and distanced himself to "catch [his] bearings" and "to get out of the cloud of the substance." (Id.) Defendant Dodrill testified that a short time later, he was dizzy, stumbling around, and light-headed. (Id., pp. 28 and 35.) Defendant Dodrill explained that Defendant Hogan attempted to tase Plaintiff, but the taser malfunctioned and Defendant Dodrill was hit with one of the projectiles from the taser. (Id., pp. 30 – 31, 52 - 53.) As a result of his exposure to the white powder, Defendant Dodrill testified that he received the following medical treatment (1) Administration of Narcan from a nurse that was a passerby; (2)

Administrated of Narcan through the veins by EMS; and (3) A Narcan IV drip from at the hospital.

(Id., p. 35.) Defendant Dodrill acknowledged that testing conducted at the hospital did not reveal

fentanyl in his system. (Id., p. 58.) Defendant Dodrill, however, explained the negative fentanyl

test as follows:

> The hospital failed to do a blood test. They did a urinalysis. Based off the expert
> that we consulted with [in State court proceedings], it takes approximately four
> hours for your body to break down fentanyl enough to be testified, or enough to be
> detected in a urinalysis test. Also, the test would have to be specific for fentanyl
> and not just opiates because fentanyl is a synthetic opiate.

(Id., p. 62.)

On June 10, 2024, Plaintiff pled guilty to the single-count Indictment. (Id., pp. 6 – 14, 19.)

It is undisputed that Plaintiff's Plea Agreement contained a "Stipulation of Facts," which was

attached as Exhibit A. (Id., pp. 9, 13 – 14.) The "Stipulation of Facts" contain relevant conduct

concerning the above incident. (Id.) The "Stipulation of Facts" stated, in pertinent part, as follows:

> On September 27, 2022, I was a passenger in a vehicle that was stopped in
> Oak Hill, Fayette County, West Virginia, within the Southern District of West
> Virginia. I was asked to exit the vehicle and stand at the front of an Oak Hill Police
> officer's cruiser. I ran the opposite direction and was tased while I fled from the
> officer. I was wearing a cross-body bag that contained controlled substances
> including methamphetamine, fentanyl, and tablets containing methamphetamine
> and ecstasy.
> The controlled substances in my bag were collected and sent to the DEA
> laboratory for testing. The total amounts of each controlled substance recovered
> from my bag were as follows:
> Methamphetamine (ice) – 17.8 grams
> Methamphetamine mixture – 49.92 grams
> Fentanyl – 148.64 grams
> Cocaine – 1.05 grams
> The total amount of controlled substances I am responsible for possession
> with the intent to distribute was at least 700 kilograms but less than 1,000 kilograms
> of converted drug weight. I intended to distribute the methamphetamine and
> fentanyl that I possessed in and around the Southern District of West Virginia.
> The parties stipulate and agree that the city of Oak Hill is in Fayette County,
> West Virginia, and within the Southern District of West Virginia. I further agree
> that Methamphetamine and Fentanyl are both Schedule II controlled substances.
> This Stipulation of Facts does not contain each and every fact known to

13

defendant and to the United States concerning his involvement and the involvement of others in the charges set forth in the Indictment.

(Id., pp. 13 – 14.)

## C.      *Body Camera Video of the Incident:*

During the traffic stop, the driver advised that he did not own the vehicle and neither the driver nor Plaintiff could locate the registration or insurance cards. (Document Nos. 40-1 and 53, 01:19 – 03:17.) Soon after Defendant Dodrill began interacting with the occupants of the vehicle, Plaintiff reached for the door handle. (Id., 01:50.) After the parties failed to provide the registration and insurance cards and the driver's admission that he "hasn't had [a license] in a while," Defendant Dodrill directed the parties to exit the vehicle and stand in front of his cruiser. (Id., 03:22 - 03:30.) Within nine (9) seconds of being directed out of the vehicle and being told three times to stand in front of the police cruiser, Plaintiff fled on foot. (Id., 03:28 – 03:52.) Defendant Dodrill pursued Plaintiff on foot and deployed his taser. (Id., 03:52 - 03:54.) The length of the application of the taser lasted approximately seven (7) seconds and the taser can be audibly heard stopping. (Id., 03:55 – 04:02.) Plaintiff then attempted to stand up resulting in Defendant Dodrill applying the taser again while directing Plaintiff to "lay down," "don't reach," and "stop reaching." (Id., 04:04 – 04:28.) Although Plaintiff stated "ok" indicating his agreement that he would lay down, Plaintiff continued to resist and attempted to reach for his crossbody bag. (Id.) Plaintiff can verbally be heard stating "you are going to kill" at the same time Plaintiff is seen moving into a sitting position in an effort to stand and resisting Defendant Dodrill's attempt to restrain Plaintiff's hands. (Id., 04:28 – 04:32.) Defendant Dodrill is then in a position behind Plaintiff's back with a grip on Plaintiff's left hand while Plaintiff continues to struggle to get up and resist. (Id., 04:33 – 04:42.) During this struggle, Defendant Dodrill instructs Plaintiff to "give me your f*cking hands" and is seen briefly placing Plaintiff in a chokehold. (Id., 04:41 – 04:46.) During this time,

14

Defendant Dodrill appears to yell in pain (04:43) and states "I need some f*cking help" (04:44 – 04:45) as he continues to struggle with Plaintiff. Although the body camera is dislodged from Defendant Dodrill's body during this struggle, Plaintiff, Defendant Dodrill, and Officer Hogan can be heard and seen coming in and out of view having a significant struggle trying to combat Plaintiff's resistance. (Id., 04:46 – 05:19.) During this time, it is visible that Plaintiff is on his feet and offering significant resistance to Defendant Dodrill's and Officer Hogan's attempts to restrain his hands. (Id.) Defendant Dodrill appears to remove his handcuffs from his belt as Officer Hogan directs Plaintiff to "put your hands behind your back." (Id., 05:05 – 05:19.) As Defendant Dodrill appears to get one handcuff on Plaintiff and struggles to get control of Plaintiff's other hand, Officer Hogan directs Plaintiff to "drop it." (Id., 05:22 – 05:44.) Defendant Dodrill then appears to retreat from the struggle. (Id., 05:49.) At this time Plaintiff is seen again attempting to stand as Officer Hagan attempts to restrain Plaintiff while she directs Plaintiff at least five time to "let go" and "let go of it." (Id., 05:49 – 06:22.) Defendant Dodrill then directs Officer Hogan to tase Plaintiff. (Id., 06:24.) Officer Hogan appears to have difficulty locating her taser. (Id., 06:25 – 06:45.) Defendant Dodrill then is visible with a taser prong in his right leg. (Id., 07:13.) During this time Plaintiff is heard repeating stating that "I can't breathe," while Officer Hagan repeatedly directs Plaintiff to "put your hands behind your back" and "let go." (Id., 07:14 – 07:26.) Defendant Dodrill then states "I think I'm overdosing." (Id., 07:27.) While Officer Hogan is continuing to direct Plaintiff to "put his hands behind his back," Defendant Dodrill pulls his baton. (Id., 07:3 – 07:35.) Defendant Dodrill then stands with his head bent over for a period of time. (Id., 07:38 – 7:52.) The video then exhibits a baton being used one time followed again by directions from both Defendant Dodrill and Officer Hogan for Plaintiff to stop resisting. (Id., 08:14 – 08:18.) Both officers are heard requesting backup to their location. (Id., 08:26 - 08:32.) Plaintiff then continues

15

to offer significant resistance against Officer Hogan and Officer Hogan is picked up off her feet several times due to Plaintiff's resistance. (Id., 08:38 – 09:02.) The struggle continues and Officer Hogan again directs Plaintiff to "let go of it" and "let go of the dope." (Id., 09:02 – 09:19.) Defendant Dodrill then can be heard struggling with the effects of the overdose. (Id., 11:22 - 16:50.) Later, Officer Hagan complains of being dizzy and is visibly having difficulty standing. (Id., 18:13 – 19:30.)

## THE STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief." Id. at 556 U.S. at 679, 129 S.Ct. at 1950. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction,

16

however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Virginia Legal Aid Society, Inc., 807 F.3d 619, 630 (4th Cir. 2015), abrogated in part on other grounds by, Bing v. Brivo System, LLC, 959 F.3d 605, 914-15 (2020).

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2)

17

committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

In his Amended Complaint, Plaintiff alleges that Defendant Dodrill used excessive force by tasing him, putting him in a chokehold, and hitting him with his baton. (Document No. 38.) Plaintiff explains that he was the passenger in a vehicle that was stopped by Defendant Dodrill for illegal window tint. (Id., p. 2.) Plaintiff acknowledges that it is "not in dispute that Plaintiff ran from Defendant [Dodrill] when Plaintiff stepped out of the vehicle." (Id.) Plaintiff complains that "Defendant [Dodrill] did not give any commands to Plaintiff to stop running from Defendant prior to Defendant's action of tasing Plaintiff." (Id.) Plaintiff states that he was "temporarily subjected to total paralysis, which cause Plaintiff to fall to the ground." (Id., pp. 2 – 3.) Plaintiff claims he was "subdue by Defendant [Dodrill] after Defendant [Dodrill] tased Plaintiff [and] in doing so, Defendant [Dodrill] caused injuries to Plaintiff's person, i.e. face (beaten with a baton)." (Id., p. 3.) Plaintiff alleges that "[e]ven after the fact of Defendant [Dodrill] subduing Plaintiff on the ground, Defendant [Dodrill] then placed Plaintiff in a chokehold causing Plaintiff to not be able to breathe." (Id., pp. 3 – 4.) Plaintiff argues that "Defendant's action in choking Plaintiff while Plaintiff was subdued, stand in violation of the law (Fourth Amendment)." (Id.) Plaintiff states that he suffered the following injuries as a result of Defendant Dodrill's use of excessive force: (1) 3 cm laceration to the left side of the cheek; and (2) left zygomatic arch fracture. (Id., pp. 8 – 9.)

In the Motion to Dismiss and Memorandum in Support, Defendant Dodrill first argues that Plaintiff's Amended Complaint "failed to go beyond the 'unadorned, the-defendant-unlawfully-harmed me accusations.'" (Document No. 39 and Document No. 40, pp. 8 – 9.) Defendant Dodrill argues that "[r]ather than flesh out the factual basis underlying the event serving as the foundation of the initial Complaint, the Amended Complaint contains significantly less facts than the initial

18

Complaint and instead, heavily relies on recitals of the legal elements and unsupported conclusory statements." (Id., p. 8.) Defendant Dodrill notes that Plaintiff's Amended Complaint "proclaims 'the record clearly shows the fact, after the [Plaintiff began to flee] defendant violated Plaintiff's Constitutional rights, i.e. (Fourth Amendment excessive force).'" (Id.) Although Plaintiff cites Gagliani v. Lexington County Sheriff's Dept., 2022 WL3974192 (D.S.C. Sept. 1, 2022), Defendant Dodrill argues that Gagliani is distinguishable because Plaintiff "acted suspiciously, refused several orders when exiting the vehicle, fled from a lawful traffic stop on the side of an active public road, while in possession of a crossbody bag with unknown contents." (Id., pp. 8 – 9.) Defendant Dodrill further notes that "Plaintiff then went on to vigorously resist any efforts to subdue him while also necessitating ever increasing amounts of proportional force to subdue him." (Id., p. 9.) Defendant Dodrill contends that Plaintiff's claim should be dismissed because "Plaintiff has not alleged any specific facts to support a plausible claim." (Id.)

Second, Defendant Dodrill argues he is entitled to qualified immunity because no violation of a constitutional right occurred. (Id., pp. 10 – 18.) Defendant Dodrill acknowledges that Plaintiff alleges the use of excessive force, but Defendant Dodrill contends that Plaintiff's "Amended Complaint fails to sufficiently outline any factual basis of conduct which could establish such a violation under the circumstances created by Plaintiff during the arrest." (Id., p. 10.) Defendant Dodrill argues that Plaintiff cannot satisfy the Graham factors as to establish excessive force. (Id., pp. 12 – 15.) As to the first Graham factor, Defendant Dodrill argues that "the severity of the suspected crime at issue was high as Dodrill suspected Plaintiff's involvement with or the trafficking of illegal narcotics." (Id., p. 11.) As to the second Graham factor, Defendant Dodrill asserts that he "had ample reason to believe Plaintiff posed an immediate threat to his and the public's safety." (Id., p. 13.) Defendant Dodrill argues that "a reasonable officer could have

19

believed Plaintiff was armed based on his behavior and thus posed an immediate threat based upon Plaintiff's suspicious conduct before exiting the vehicle." (Id.) Defendant Dodrill argues that "[s]ince Plaintiff refused to comply with basic commands and the subsequently fled from Dodrill, the immediate safety risks to responding officers and the public were reasonably calculated to be cured by using the less restrictive and non-lethal alternative of the taser and subsequently the baton to subdue Plaintiff." (Id.) Considering the third Graham factor, Defendant Dodrill contends that Plaintiff was actively resisting arrest. (Id.) Defendant Dodrill contends that considering the "corresponding criminal action and factual basis underlying such charges, Plaintiff disregarded lawful commands while inside the vehicle, refused directions almost immediately after existing the vehicle, attempted to flee the scene, further disregarded commands to stop, subsequently engaged in hand-to-hand combat with Officers Dodrill and Hogan, and then resorted to exposing these officers to Fentanyl in an effort to escape." (Id., p. 14.) Considering the last Graham factor, Defendant Dodrill notes the only injury asserted by Plaintiff "are said to be from the use of a baton and consists of Plaintiff presently living with permanent disfigurement of the left side of his cheek and left zygomatic arch from surgery." (Id.) Defendant Dodrill notes that "Plaintiff makes no reference to injuries sustained by virtue of Officer Dodrill's use of a taser or brief chokehold." (Id.) Defendant Dodrill notes that the alleged injuries "only occurred *after* Plaintiff engaged in strenuous combat and utilized Fentanyl in his fight with Officers Dodrill and Hogan." (Id.) Thus, Defendant Dodrill argues that the Court should "find that the totality of the circumstances and the Amended Complaint's ultimate lack of sufficiently pled factual basis does not overcome the justification of requisite force that Plaintiff necessitated by his own conduct." (Id., p. 15.) Defendant Dodrill, therefore, argues that he is entitled to qualified immunity because his conduct did not violate Plaintiff's constitutional rights. (Id.)

20

In the alternative, Defendant Dodrill contends that "[e]ven if a constitutional right was violated, Plaintiff's asserted right was not clearly established." (Id., pp. 15 – 18.) First, Defendant Dodrill contends "[i]t is not clear from applicable precedent that a suspect who acts suspiciously upon contact, refuses to comply with police directives when exiting a vehicle, flees from law enforcement, and continues to refuse to comply with directives has a right to be warned before the use of such force or to not be tased at all." (Id., p. 15.) Second, Defendant Dodrill asserts that "after all of the aforementioned occurrences, and after engaging in physical combat with Dodrill and Hogan, and after exposing officers to illegal substances, it is not clear nor supported by applicable precent that Plaintiff has a right not to be subdued by way of utilizing a taser or baton." (Id., p. 15 – 16.) Defendant Dodrill argues the foregoing "necessitates a finding that Officer Dodrill's actions were entirely and objectively reasonable in light of existing laws as they relate to the response to Plaintiff's conduct." (Id., p. 16.) Defendant Dodrill concludes that "the Court must determine whether, as of September 27, 2022, that relevant precedent established an officer's use of a taser and baton were objectively unreasonable and therefore constitutionally excessive when used against a fleeing suspect who is believed to be armed, especially when that suspect then becomes physically resistant, attacks two police officers, had given no indication that he will yield, and further utilized illegal narcotics to assist in his escape as evidenced by Exhibit A." (Id., p. 17.) Therefore, Defendant Dodrill contends he is entitled to qualified immunity. (Id., p. 18.)

In Response, Plaintiff first argues that "Defendant's Motion is silent in contesting Plaintiff's Complaint." (Document No. 42, p. 2.) Specifically, Plaintiff states "there exist no contention to any of Plaintiff's issues raised in Plaintiff's Amended Complaint stated in Defendant's Motion to Dismiss." (Id.) Plaintiff appears to argue that Defendant incorrectly asserts his arguments for dismissal in the Memorandum in Support. (Id., pp. 2 – 4.) Second, Plaintiff

21

disputes that "after the taser cycle ended, Plaintiff continued to ignore commands and immediately attempted to get up." (Id., pp. 5 – 6.) Plaintiff acknowledges that he admits that he ran from Defendant Dodrill once Plaintiff existed the vehicle, but Plaintiff complains that Defendant Dodrill never commanded Plaintiff to stop running after Plaintiff existed the vehicle. (Id., 6.) Plaintiff argues that Defendant Dodrill used excessive force because Defendant Dodrill "gave no command for Plaintiff to stop running before defendant tased Plaintiff." (Id., p. 7.) Citing Gagliani v. Lexington County Sheriff's Dept., 2022 WL 3974192 (D.S.C. Sept. 1, 2022), Plaintiff argues that "there must be a command or warning to a person before an officer can utilize a taser against that person." (Id., p. 9.) Thus, Plaintiff argues that Defendant Dodrill is not entitled to qualified immunity. (Id., pp. 9 – 10.) Third, Plaintiff disputes that he did not allege injuries from Defendant Dodrill's use of a taser and chokehold. (Id., p. 11.) Concerning his injuries from Defendant Dodrill's use of a taser and chokehold, Plaintiff contends that his Amended Complaint shows that the taser caused "total paralysis, which caused Plaintiff to fall to the ground" and the chokehold caused "Plaintiff to not be able to breathe." (Id.) Fourth, Plaintiff argues that the traffic stop was not a valid basis for the vehicle stop. (Id., p. 12.) Fifth, Plaintiff disputes that he utilized Fentanyl against Defendant Dodrill and Officer Hogan as they were in the process of subduing him. (Id., p. 13.) Plaintiff contends that according to the criminal complaint against Plaintiff, Plaintiff was charged with being in possession of methamphetamine and fentanyl. (Id.) Plaintiff further contends that Defendant Dodrill's medical records merely indicate that Plaintiff was subject to "poisoning by other drugs," "no fentanyl is mentioned," and testing for fentanyl was negative.[5] (Id., p. 14.) Therefore, Plaintiff concludes his Amended Complaint has stated cognizable claims of excessive

---

[5] The undersigned finds that for purpose of considering Defendant Dodrill's Motion to Dismiss, whether Plaintiff deployed fentanyl, methamphetamine, or another controlled substance, is immaterial. It appears undisputed that Plaintiff intentionally deployed a powder substance in the face of Defendant Dodrill, which caused a drug overdose.

22

force and Defendant Dodrill's Motion to Dismiss should be denied. (Id., pp. 15 – 20.)

Plaintiff then filed a document entitled "Plaintiff Amends Both Amended Complaint and Response to Defendant's Motion to Dismiss." (Document No. 43.) Plaintiff indicates that he wishes to amend his Amended Complaint to includes "additional physical injuries implemented by Defendant against Plaintiff's person on the dated of September 27, 2022." (Id., p. 2.) Specifically, Plaintiff states that he suffered "nasal bone fractures" as a result of Defendant Dodrill's use of a baton or flashlight. (Id., pp. 2 - 3.) Plaintiff contends that he suffered the "nasal bone fractures" after Plaintiff "was already subdued by defendant." (Id.) Plaintiff, therefore, argues that the foregoing constitutes excessive force in violation of the Fourth Amendment. (Id., pp. 3 – 5.) Plaintiff further argues that Defendant Dodrill is not entitled to qualified immunity. (Id.)

In Reply, Defendant Dodrill first argues that Plaintiff's argument is baseless that Defendant Dodrill's Motion to Dismiss is silent in contesting Plaintiff's Amended Complaint. (Document No. 46, pp. 1 – 2.) Defendant Dodrill contends that his "Motion to Dismiss is not silent in contesting Plaintiff's Complaint, but rather, in conjunction with the supporting memorandum asserts legal and factual grounds in support of the relief sought, being dismissal of the Complaint." (Id.) Defendant Dodrill notes that his Motion to Dismiss and Memorandum in Support were filed in accordance with and pursuant to Local Rule of Civil Procedure 7.1(a)(1) and (a)(2)(11). (Id., p. 2.) Defendant Dodrill argues that his Motion and Memorandum in Support "are far from silent in confronting the operative Complaint." (Id.) Second, Defendant Dodrill argues that Plaintiff incredulously argues that facts "stand in question" or dispute. (Id.) Defendant Dodrill argues that the events were captured by videographic means and are appropriate for consideration at this procedural stage. (Id.) Defendant Dodrill further notes that Plaintiff states that he "conceded that he (plaintiff) ran from defendant, once he (plaintiff) exited the vehicle." (Id.) Third, Defendant

Dodrill disputes Plaintiff's argument that the law was clearly established prior to the incident that Defendant Dodrill's application of force utilizing a taser without a command to stop running constitutes excessive force. (Id., pp. 2 – 3.) Although Plaintiff cites Harlow v. Fitzgerald, 457 U.S. 800 (1982) and Gagliani v. Lexington County Sheriff's Dept., 2022 WL 3974192 (D.S.C. Sept. 1, 2022), in support, Defendant Dodrill explains that both cases are easily distinguishable. (Id.) Defendant Dodrill notes that Plaintiff entirely ignores the fact that "lawful orders were given to him." (Id.) Specifically, Defendant Dodrill asserts that Plaintiff concedes that he was ordered by Defendant Dodrill to exit the vehicle and stand behind the pulled over vehicle and in front of Defendant Dodrill's cruiser. (Id.) Instead, Defendant Dodrill explains that Plaintiff immediately began to flee. (Id.) Fourth, Defendant Dodrill contends there is no genuine issue of material fact concerning the issue of injury to Plaintiff. (Id.) Fifth, Defendant Dodrill disputes Plaintiff's argument that Defendant Dodrill conceded the traffic stop for tinted windows was not a valid basis for the vehicle stop. (Id., p. 4.) Defendant Dodrill further argues that such is irrelevant as Plaintiff's Complaint involves an excessive force and not an unlawful search claim. (Id.) Sixth, Defendant Dodrill notes that Plaintiff's claim that there is an issue of fact concerning whether the powder was Fentanyl, is irrelevant. (Id., p. 5.) Defendant Dodrill notes that the videographic material reveals that Plaintiff used a powder substance against the officers in resisting arrest and the officers clearly had adverse physical reaction constituting an overdose. (Id.) Defendant Dodrill concludes that even "[i]n disregarding his own conduct, Plaintiff remains unable to fully and sufficiently allege, with any degree of particularity, how Defendant subjected Plaintiff to unnecessary and excessive force in violation of the Fourth Amendment." (Id., p. 6.)

**A.      Plaintiff's claim that Defendant's Motion to Dismiss and Memorandum in Support are improperly filed:**

Plaintiff appears to argue that Defendant Dodrill's Motion to Dismiss is improperly filed

24

because the "Motion is silent in contesting Plaintiff's Complaint." (Document No. 42, p. 2.) Specifically, Plaintiff states "there exist no contention to any of Plaintiff's issues raised in Plaintiff's Amended Complaint stated in Defendant's Motion to Dismiss." (Id.) Plaintiff appears to argue that Defendant incorrectly asserts his arguments for dismissal in the Memorandum in Support. (Id., pp. 2 – 4.) Plaintiff's above arguments are wholly without merit. Defendant Dodrill's Motion to Dismiss is not silent in contesting Plaintiff's Amended Complaint. (See Document No. 39.) Defendant Dodrill's Motion to Dismiss, filed in conjunction with the Memorandum in Support, argues numerous legal and factual grounds in support of Defendant Dodrill's request for dismissal. (See Document Nos. 39 and 40.) The undersigned finds that Defendant Dodrill's Motion to Dismiss and Memorandum in Support are filed in accordance with Rule 7.1 of the Local Rules of Civil Procedure for the Southern District of West Virginia. Rule 7.1(a)(1) of the Local Rules provides, in pertinent part, as follows: "All motions shall be concise, state the relief requested precisely, and be filed timely but not prematurely." L.R. Civ. P. Rule 7.1(a)(1). Rule 7.1(a)(2)(11) of the Local Rules provides, in pertinent part, as follows: "A memorandum of not more than 20 pages in length *must* accompany the . . . motions . . . (11) to dismiss." L.R. Civ. P. Rule 7.1(a)(2)(11)(emphasis added). A review of Defendant Dodrill's Motion to Dismiss and Memorandum in Support clearly reveals that such documents were properly and appropriately filed in compliance with the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure for the Southern District of West Virginia. Accordingly, the undersigned recommends that the District Court find that Plaintiff's above argument is without merit.

**B.     Excessive force:**

A "claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [a] person" is properly analyzed under the Fourth

Amendment's objective reasonableness' standard." Graham v. Connor, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Fourth Amendment prohibits unreasonable seizures, which includes the right to be free of "seizures effectuated by excessive force." Schultz v. Braga, 455 F.3d 470, 476 (4th Cir. 2006). Courts analyze whether an officer has used excessive force under a standard of objective reasonableness. Scott v. Harris, 550 U.S. 372, 381, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); also see Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003)(force is excessive when it exceeds the bounds of "objective reasonableness"). An officer's subjective intent or motivation is irrelevant. Id. Courts must consider "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "[A] Court must focus on the moment the force is employed." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011); also see Graham, 490 U.S. at 397, 109 S.Ct. 1865(Courts must make "allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving"). "Evaluating the reasonableness of the officer's actions 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests at stake.'" Smith v. Ray, 781 F.3d 95, 101 (4th Cir. 2015)(citing Graham, 490 U.S. at 396, 109 S.Ct. 1865). In assessing the reasonableness of the force, a Court should "view it in full context, with an eye toward the proportionality of the force in light of all the circumstances." Waterman v. Batton, 393 F.3d 471, 481 (4th Cir. 2005); also see Tennessee v. Garner, 471 U.S. at, 8 – 9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)(Courts should decide "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure"). Giving "careful attention to the facts and circumstances of each particular case," Courts should consider the following factors: (1) "the

26

severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." Smith, 781 F.3d at 101(citing Graham, 490 U.S. at 396, 109 S.Ct. 1865.). The test considers whether the totality of the circumstances justifies the force used during the seizure. Jones, 325 F.3d at 527-28. A court must also consider that officers often make "split second judgment - - in circumstances that are tense, uncertain, and rapidly evolving - - about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397, 109 S.Ct. 1865.

Concerning the first Graham factor, the severity of the crime at issue, the undersigned finds this factor weighs strongly in favor of Defendant Dodrill. The undersigned must examine the circumstances and the information known to Defendant Dodrill immediately before he tased Plaintiff. The record reveals that Defendant Dodrill was aware that the vehicle Plaintiff was traveling in was observed leaving a residence where several complaints concerning the sale and delivery of controlled substances had been reported to both the Oak Hill City Police Department and the Fayette County Sheriff's Office. After observing the vehicle leaving the suspected residence and being unable to see inside the vehicle due to dark window tint, Defendant Dodrill initiated a traffic stop on the suspected violation of W.Va. Code 17C-15-36A. Defendant Dodrill, however, observed the subject vehicle passing several places to safely pull over and detected the odor of marijuana emanating from the vehicle immediately upon making contact with the occupants. The occupants were further unable to produce necessary vehicle documentation, the driver was unable to produce a valid license, the Plaintiff reached for the door handle shortly after the interaction began, and the occupants appeared nervous. Therefore, the undisputed record supports a finding that the severity of the suspected crime at issue was high as Defendant Dodrill suspected Plaintiff's involvement with trafficking and/or possession of illegal narcotics. See

Knight Estate of Graham v. City of Fayetteville, 234 F.Supp.3d 669, 686 (E.D.N.C. Feb. 10, 2017)(finding severity of the crime was high where plaintiff was suspected of a drug offense, there was a strong odor of marijuana coming from the vehicle, and plaintiff attempted to flee the scene with the drugs). Upon Defendant Dodrill instructing the occupants to exit the vehicle and stand in front of his cruiser, both occupants delayed exiting and appeared nervous. Defendant Dodrill also observed Plaintiff wearing a crossbody bag. The body camera video reveals that within nine seconds of being directed out of the vehicle and being told three times to stand behind the vehicle (and in front of the cruiser), Plaintiff began to flee on foot with the crossbody bag. Fleeing from an officer is a crime in West Virginia. See W.Va. Code § 61-5-17(d). Since Plaintiff concedes that he fled from Defendant Dodrill, thereby engaging in criminal activity, the undersigned finds this further supports a finding that the first Graham factor weighs in favor or Defendant Dodrill.

Considering the second Graham factor, whether Plaintiff posed an immediate threat to the safety of the police officer or others, weighs in favor of Defendant Dodrill. Even when viewing the facts in a light most favorable to Plaintiff, Defendant Dodrill had adequate reason to believe Plaintiff posed an immediate threat to his and the public's safety. Given Plaintiff's nervous disposition, refusal to obey instructions, and flight with possession of a crossbody bag, a reasonable officer could have believed Plaintiff was armed and posed an immediate threat to Defendant Dodrill or the public. See Nazaro v. Gutierrez, 103 F.4th 213, 233 (4th Cir. 2024)(quoting United States v. Robinson, 846 F.3d 694, 698 (4th Cir. 2017)(en banc)(acknowledging that "traffic stops alone are inherently dangerous for police officers"); Knibbs v. Momphard, 30 F.th 200, 220 (4th Cir. 2022)(quoting Hensley ex rel. North Carolina v. Price, 876 F.3d 573, 585 (4th Cir. 2017)(noting that once the officer issued a verbal command, the character of the situation is transformed. If a suspect continues to move and fails to follow a command, "the suspect's

28

continued movement will likely raise in the officer's mind objectively grave and serious suspicions about the suspect's intentions."); <u>Knight Estate of Graham</u>, 234 F.Supp.3d at 686(finding plaintiff's act of fleeing the scene with drugs placed the officers and the public in danger). Next, the undersigned considers Plaintiff's complaint concerning Defendant Dodrill's use of a chokehold. After Defendant Dodrill's initial use of force (use of taser) to stop Plaintiff from fleeing, Plaintiff continued to escalate the situation by continuing to disobey directions to "don't reach" or "stop reaching" into the crossbody bag. Thus, immediately prior to Defendant Dodrill's use of a chokehold, Plaintiff was attempting to reach inside his crossbody bag. A reasonable officer could have believed Plaintiff's action of attempting to reach inside his crossbody bag posed an immediate threat to the officers or public's safety. Lastly, the undersigned considers Defendant Dodrill's use of a baton against Plaintiff. Immediately prior to Defendant Dodrill's use of a baton, Plaintiff had managed to stand and successively retrieved a powder substance from his crossbody bag that was weaponized against Defendant Dodrill. Again, a reasonable officer could have believed Plaintiff's action of deploying a powdery substance into the face of an officer posed an immediate threat to the officers or public's safety.

A consideration of the third <u>Graham</u> factor, whether Plaintiff actively resisted arrest or attempted to evade arrest by flight, weighs in Defendant Dodrill's favor. Viewing the facts in a light most favorable to Plaintiff, the undisputed body camera video reveals that Defendant Dodrill did not use any force against Plaintiff until Plaintiff disobeyed instructions and attempted to flee the scene with a crossbody bag. Although Defendant Dodrill did not instruct Plaintiff to stop prior to deploying the taser, Defendant Dodrill had instructed Plaintiff three times to exit the vehicle and stand in front of the police cruiser. Plaintiff clearly disobeyed Defendant Dodrill's instructions and was fleeing at the time Defendant Dodrill used the taser. <u>See</u> <u>Barnes v. Felix</u>, 605 U.S. 73, 84

– 90, 145 S.Ct. 1353, 221 L.Ed.2d 751 (2025)(noting that when a suspect of a minor offense flees, this "could well be indicative of a larger danger" and "[f]leeing from the stop could suggest that the driver is preparing to commit or has committed a more serious crime – and is attempting to evade detection or arrest."); Knight Estate of Graham, 234 F.Supp.3d at 686(finding plaintiff's flight from the vehicle was in direct contravention of the officer's earlier and direct commands for plaintiff to "sit tight"). Furthermore, all additional force used by Defendant Dodrill against Plaintiff was in response to Plaintiff escalating resistance and attempts to retrieve a powdery substance from his crossbody body that was weaponized against the officers.

Finally, the undersigned considers Plaintiff's alleged injuries. Jones, 325 F.3d at 531. "An efficient, lawful arrest of a resisting suspect that cause the suspect to suffer only de minimis injuries does not constitute excessive force." Pegg v. Herrnberger, 845 F.3d 112, 120 (4th Cir. 2017). If the plaintiff suffers severe injuries, this element weighs in the plaintiff's favor. Jones, 325 F.3d at 530-31. In the instant case, Plaintiff claims the following: (1) Defendant Dodrill's use of the taser caused "total paralysis, which caused Plaintiff to fall to the ground;" (2) Defendant Dodrill's use of the chokehold caused "Plaintiff to not be able to breathe;" and (3) Defendant Dodrill's use of the baton caused a 3 cm laceration to the left side of the cheek, left zygomatic arch fracture nose, and "nasal bone fractures." The injuries Plaintiff's allegedly suffered due to Defendant Dodrill's use of the taser and chokehold are de minimis. The injuries Plaintiff allegedly suffered due to Defendant Dodrill's use of a baton, however, could qualify as severe injuries. Although Plaintiff may have suffered severe injuries as a result of Defendant Dodrill's use of a baton, the undersigned must consider the "facts at the moment that the challenged force was employed 'with an eye toward the proportionality of the force in light of all the circumstance." Considering the proportionality of the force in light of all the circumstances, Defendant Dodrill only used the baton after Plaintiff's

weaponized a powdery substance against Defendant Dodrill that ultimately caused Defendant Dodrill to suffer a drug overdose requiring the administration of Narcan and subsequent emergency medical treatment.

Drawing all reasonable factual inferences in favor of Plaintiff and viewing the Graham factors with the totality of the circumstances, the undersigned finds that a reasonable officer faced with similar circumstances would have determined that Plaintiff posed an immediate threat to the safety of the officers or others. In situations like these, the law makes "allowance[s] for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving." See Graham, 490 U.S. at 397, 109 S.Ct. at 1872. As a matter of law, the judgment of Defendant Dodrill to use force via a taser when faced with a suspect that fled with a crossbody bag and ignored commands to stand in front of the police cruiser, was objectively reasonable, not excessive, and did not violate Plaintiff's Fourth Amendment rights. Upon Defendant Dodrill instructing the occupants to exit the vehicle and stand in front of his cruiser, both occupants delayed exiting and appeared nervous. Defendant Dodrill also observed Plaintiff wearing a crossbody bag. The body camera video reveals that within nine seconds of being directed out of the vehicle and being told three times to stand behind the vehicle (and in front of the cruiser), Plaintiff began to flee on foot with the crossbody bag. Defendant Dodrill's use of a taser for six to seven seconds to stop Plaintiff does not constitute the use of unnecessary or excessive force. See Estate of Armstrong v. Village of Pinehurt, 810 F.3d 892, 903 (4th Cir. 2016)(tasers are proportional force only when deployed in response to a situation in which a reasonable officer would perceive some immediate danger that could be mitigated by using the taser."); but also see Meyers v. Baltimore County, 713 F.3d 723, 734-35 (4th Cir. 2013)(finding "[i]t is an excessive and unreasonable use of force for a police officer repeatedly to administer

electrical shocks with a taser on an individual who no longer is armed, has been brought to the ground, has been restrained physically by several other officers, and no longer is activity resisting arrest.") Although Plaintiff alleges in his Amended Complaint that he was "subdue by Defendant after Defendant tased Plaintiff," the body camera video contradicts such. The body camera video reveals that despite Defendant Dodrill's use of the taser, Plaintiff continued to resist and reach for the crossbody bag. Therefore, the undersigned finds that Defendant Dodrill's use of taser was applied in a good faith effort to restrain Plaintiff, who was fleeing, potentially armed, and not physically secured.

As a matter of law, the judgment of Defendant Dodrill to use force via a brief chokehold when faced with a suspect that was resisting, attempting to reach into a crossbody bag, and ignoring commands to "stop reaching," was objectively reasonable, not excessive, and did not violate Plaintiff's Fourth Amendment rights. Once the taser cycle ended, Plaintiff continued to ignore commands and immediately attempted to get up. When Plaintiff began to stand up, Defendant Dodrill commenced an additional application of the taser and again directed Plaintiff to "lay down." Although Plaintiff responded "ok" thereby indicating that he would lay down, Plaintiff continued to escalate the situation by reaching for his crossbody bag. Defendant Dodrill repeatedly directed Plaintiff to "don't reach" or "stop reaching," but Plaintiff continued to ignore directives and continued to reach for items within his bag. A struggle ensued where Defendant Dodrill attempted to grab any body part available (arms, hands, back, neck), and even briefly applied a chokehold, in efforts to gain control of Plaintiff and stop Plaintiff's attempts to reach inside the crossbody bag. The record reveals that prior to Defendant Dodrill briefly placing Plaintiff in a chokehold, Plaintiff posed an immediate threat to the safety of Defendant Dodrill because Plaintiff was attempting to reach inside his crossbody bag. Although Plaintiff's Amended Complaint alleges

32

that he was "subdued" at the time Defendant Dodrill placed Plaintiff in the chokehold, the body camera video contradicts such. The body camera video reveals that Plaintiff was offering significant resistance and was attempting to stand and reach into his crossbody bag at the time Defendant Dodrill briefly placed Plaintiff in a chokehold. Defendant Dodrill's use of a brief chokehold was applied in a good faith effort to subdue or restrain Plaintiff, who was potentially armed and not physically secured. Thus, Defendant Dodrill's use of force via a brief chokehold when faced with the above circumstances was objectively reasonable, not excessive, and did not violate Plaintiff's Fourth Amendment rights.

As a matter of law, the judgment of Defendant Dodrill to use force via a baton when faced with an escalating situation where a suspect that was resisting and had retrieved a powdery substance from a crossbody bag that had been weaponized against the officers, was objectively reasonable, not excessive, and did not violate Plaintiff's Fourth Amendment rights. A review of the body camera video reveals that despite Defendant Dodrill's efforts to gain control of Plaintiff, Plaintiff was able to stand up and continued to exhibit significant resistance. Although Officer Hogan attempted to assist with gaining control of Plaintiff, Plaintiff continued to use physical resistance against both Officer Hogan and Defendant Dodrill while continuing to reach for his crossbody bag. During the struggle, Plaintiff retrieved a baggie containing a powdery substance from his crossbody bag. Plaintiff then placed the substance to Defendant Dodrill's head and intentionally squeezed the baggie and its contents into the face of Defendant Dodrill. Defendant Dodrill retreated out of the powder as Officer Hogan continued to struggle with Plaintiff. Defendant Dodrill then removed his baton and hit Plaintiff in attempt for Officer Hogan to gain control of Plaintiff's hands to secure him in handcuffs. Prior to Defendant Dodrill's use of the baton, Plaintiff had weaponized a powdery substance against Defendant Dodrill and was

continuing to struggle with Officer Hogan. Although Plaintiff contends that Defendant Dodrill hit Plaintiff with a baton causing Plaintiff to suffer "nasal bone fractures" *after* Plaintiff "was already subdued by defendant," the body camera video contradicts such. The body camera video reveals that Plaintiff was continuing to offer significant resistance at the time Defendant Dodrill hit Plaintiff with the baton. The undersigned finds that Defendant Dodrill's use of the baton was applied in a good faith effort to subdue or restrain Plaintiff, who was not physically secured. Once Plaintiff was subdued or physically secured, no additional force was used, and the forced used in subduing Plaintiff was proportional and not greater than necessary to subdue Plaintiff. Based upon the foregoing, the undersigned respectfully recommends that the District Court grant Defendant Dodrill's Motion to Dismiss (Document No. 39.)

**C.      Qualified Immunity:**

Notwithstanding the foregoing, the undersigned further finds that Defendant Dodrill is entitled to qualified immunity. Courts have established qualified immunity for government officials in consideration of a number of factors including the substantial cost of litigation against government officials, the distraction of government officials from their public responsibilities and the disincentive to responsible and capable persons to accept government positions if there is no protection against suits accusing them of misconduct in the performance of their public duties. Government officials performing discretionary functions are generally protected from civil damages liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In determining the validity of a qualified immunity defense, the Court should be guided by a two-prong test: (1) whether the facts viewed in the light

most favorable to the Plaintiff establish a deprivation of an actual constitutional right; and (2) whether that right was clearly established at the time of the purported violation. Id. The sequence of the steps is immaterial following Pearson. The Court may exercise discretion in deciding which of the two prongs "should be addressed first in light of the circumstances in the particular case at hand." Id. at 818. "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Cooper v. Sheehan, 735 F.3d 153, 158 *4th Cir. 2013)(internal quotation marks and citations omitted).

Even assuming the use of force by Defendant Dodrill was not objectively reasonable, Plaintiff has not established that the right was clearly established at the time of the purported violation. See Schultz v. Braga, 455 F.3d 470, 476 (4th Cir. 2006)("Qualified immunity protects law enforcement officers from bad guesses in gray areas and ensures that they are liability only for transgressing bright lines.") To deny qualified immunity, the law must be "clearly established that the Fourth Amendment prohibited the officer's conduct in the 'situation he confronted.'" Mullenix v. Luna, 577 U.S. 7, 12 – 13, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015)(citation omitted)(explaining that the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition"). Although there need not be a case "directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." Kisela v. Hughes, 584 U.S. 100, 104, 138 S.Ct. 1148, 200 L.Ed.2d 449 (2018)(citation omitted). Specifically, Plaintiff has not identified, and this Court has not found, any controlling law of the United States Supreme Court or the Fourth Circuit, or any consensus of persuasive authority, which clearly establishes the right of a resisting suspect to not be taken to the ground while the suspect was fleeing or resisting arrest. Graham, 490 U.S. at 396, 109 S.Ct. 1865("the right to make an arrest . . . necessarily carries with it the right to use some degree of physical

35

coercion or threat thereof to effect it"); <u>also see</u> <u>Bolden v. Rushing</u>, 2009 WL 1160938 (D.S.C. April 28, 2009)(finding no Fourth Amendment violation when officers conducted a traffic stop and learning of an outstanding warrant for the individual, employed a taser following a warning when the plaintiff did *not* fight against the officers, but nonetheless would not allow the officers to handcuff him and the use of the taser caused plaintiff to fall and break his ankle), <u>aff'd</u>, 407 Fed.Appx. 693 (4th Cir. Ja. 14, 2011). The undersigned finds that Plaintiff's reliance upon <u>Yates v. Terry</u>, <u>Estate of Jones</u>, and <u>Gagliani</u> are misplaced because these cases are distinguishable. Unlike the instant case, the plaintiff in <u>Yates</u> was unarmed, complied with the officer's orders to place his hands on the car, and there was no attempt to flee prior to the officer tasing plaintiff for merely turning his head. <u>See</u> <u>Yates</u>, 817 F.3d at 885-86. Unlike the Plaintiff in the above case, the plaintiff in <u>Estate of Jones</u> was incapacitated and not moving at the time the officers shot plaintiff multiple times. <u>See</u> <u>Estate of Jones</u>, 961 F.3d at 669-70. Different than the Plaintiff above, the plaintiff in <u>Gagliani</u> was "an unarmed, shoeless and shirtless man who was inside his home, came outside when Deputy Kinder knocked, stood quietly and presented no immediate threat to officers or bystanders, yet officers began grabbing his arms without explanation" resulting in resistance by plaintiff and the ultimate use of a taser. <u>Gagliani</u>, 2022 WL 3974192, * at 7(noting that plaintiff posed no harm to the officers before they moved to seize him, and the officers merely decided to restrain plaintiff so he could be evaluated by EMS). Thus, the undersigned finds that Plaintiff has failed to establish that the law was clearly established that the Fourth Amendment prohibited Defendant Dodrill's use of force given the "situation he confronted" concerning Plaintiff's flight, escalating resistance, and ultimate weaponization of a powdery substance against officers. Accordingly, the undersigned further recommends that the District Court find that Defendant Dodrill's is entitled to qualified immunity.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendant Dodrill's Motion to Dismiss (Document No. 39), and **REMOVE** this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: June 24, 2026.



Omar J. Aboulhosn
United States Magistrate Judge